**Kathleen LYNCH, Appellant,**

v.

**HELM PLUMBING AND ELECTRICAL CONTRACTORS, INC., Respondent.**

**No. WD 60472.**

Missouri Court of Appeals, Western District.

Oct. 1, 2002.

Rehearing Denied Nov. 26, 2002.

Dennis J. Owens, Kansas City, for Appellant.

James Charles Johns, Clinton, for Respondent.

PAUL M. SPINDEN, Judge.

This case concerns an agent's authority to bind his principal. Kathleen Lynch appeals the circuit court's judgment ordering her to pay $19,566 in damages to Helm Plumbing and Electrical Contractors, Inc. The damages were to compensate Helm for the loss caused by Lynch's demand that it relocate a water pipe. Helm originally placed the pipeline outside the city's easement and across Lynch's property, in a location authorized by Lynch's agent. Because Lynch's agent possessed authority sufficient to bind Lynch, we affirm the circuit court's judgment.

The dispute involves Lynch's motel in Windsor. Lynch employed Edward Smiles primarily as the motel's gardener and housekeeper, but he occasionally served in other capacities.

Helm laid the pipeline in fulfillment of its contract with Windsor's municipal government. City officials gave Helm engineering drawings that indicated that the pipeline was to run between Lynch's motel sign and the roadway alongside a gas pipeline. This area between the sign and the road was south of the sign and north of the road.

Before laying the pipe across Lynch's property, Helm met with Lynch and Smiles to discuss where to put the line. Helm was concerned that the gas line and the motel sign would interfere with Helm's putting the line in the proposed location. Lynch and Smiles wanted to protect the sign, which sat on a concrete base that extended into the ground, so they discussed alternative locations for the pipeline. Smiles, in Lynch's presence and with her acquiescence, actively participated in the discussion by voicing opinions and suggestions.

Helm later met with representatives from the city and the project engineer's office at Lynch's motel to discuss where to put the water line. They discussed removing the sign and going around it. Smiles saw them and joined in their discussion. Lynch was not present.

During the meeting, Smiles produced two maps, one of which indicated that the city's easement was approximately 19½ feet wider than Helm had believed it was. Smiles allowed the others to copy the maps. Smiles claimed that, despite his producing the maps, he never gave permission to place the water line in an area between the sign and the motel—that is, north of the sign. He admitted that during this meeting he authorized Helm to put the pipeline underneath the motel's paved driveway, but maintained that he insisted that the pipeline be no closer to the motel than the sign's northernmost edge. Helm presented contradicting evidence.

After the meeting, Helm bored under the surface and across Lynch's property. The hole for the pipeline was within the additional 19½ foot area indicated on the maps produced by Smiles, specifically about four feet north of the motel sign—between the sign and the motel and underneath the paved driveway. Neither Lynch nor Smiles objected to this location until Helm began installing the pipe and a portion of the motel's driveway heaved up several feet north of the motel sign, and a brown, gooey substance percolated to the surface.

The damage to the driveway and trees and plantings upset Lynch. She ordered Helm to remove the line and to place it according to original plans. Helm complied at the loss of $19,566 that had already been expended.

Lynch sued Helm, seeking recovery for damage done to her land by Helm's alleged trespass.[1] Helm counterclaimed and sought recovery of its costs and expenses on the grounds of promissory estoppel, negligent misrepresentation, and breach of contract. After hearing the matter, the circuit court entered judgment for Helm on both the petition and Helm's counterclaims.

In this appeal, Lynch raises two points. First, she contends that the circuit court's judgment is contrary to agency law in that Smiles did not possess authority to represent her in negotiations with Helm. Second, she claims that the circuit court erred in granting damages on all three counts of Helm's counterclaim.

In reviewing the circuit court's judgment, entered without benefit of a jury, we will affirm it unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We give the prevailing party the benefit of all favorable inferences to be drawn from the evidence and disregard evidence and inferences to the contrary. *Ewing–Cage v. Quality Productions, Inc.*, 18 S.W.3d 147, 149–50 (Mo.App.2000). When the circuit court does not make findings of fact, we deem it to have found all facts in accordance with the result. Rule 73.01(c); *Weaks v. Rupp*, 966 S.W.2d 387, 392 (Mo. App.1998).

Viewing the facts in accord with the circuit court's judgment, we conclude that the circuit court found that Lynch was holding Smiles out as her agent, and that Smiles granted Helm permission to install

---

1. She also named Windsor as a defendant. The record is not complete, but we glean that the city was dismissed as a party before trial.

the line in the 19½-foot area extending north of the motel sign.

Lynch does not challenge the circuit court's finding that Smiles was her agent. She contends, however, that she is not responsible for Smiles' acts because he acted without authority.

■ She is correct that Smiles' status as an agent does not, of itself, vest Smiles with the power to bind Lynch. A principal is responsible for the acts and agreements of her agent, but only if the agent acts with actual authority—which may be express or implied—or with apparent authority. *Nichols v. Prudential Insurance Company of America*, 851 S.W.2d 657, 661 (Mo.App.1993). In addition to expressed terms, actual authority can be created by the principal's conduct in those instances in which a reasonable person would interpret the principal to have desired the agent to act on the principal's behalf. *See Cook v. Polineni*, 967 S.W.2d 687, 691 (Mo. App.1998); RESTATEMENT (SECOND) OF AGENCY § 26 (1957).

■ Even in the absence of actual authority, an agent's acts may be binding on the principal if performed with apparent authority. "Apparent authority is authority which a principal, by its acts or representations, has led third persons to believe has been conferred upon an agent[.]" *Stitt v. Raytown Sports Association, Inc.*, 961 S.W.2d 927, 932 (Mo.App. 1998) (quoting *Link v. Kroenke*, 909 S.W.2d 740, 745 (Mo.App.1995)). To establish apparent authority a party must show: "(1) the principal manifested his consent to the exercise of such authority or knowingly permitted the agent to assume the exercise of such authority; (2) the person relying on this exercise of authority knew of the facts and, acting in good faith, had reason to believe, and actually believed, the agent possessed such authority; and (3) the person relying on the appear-

ance of authority changed his position and will be injured or suffer loss if the transaction executed by the agent does not bind the principal." *Link*, 909 S.W.2d at 745. Any reliance by the third party must be reasonable. *Graue v. Missouri Property Insurance Placement Facility*, 847 S.W.2d 779, 783 (Mo. banc 1993).

■ Helm changed its position and will be injured or suffer loss if Smile's actions are not deemed to be binding on Lynch. Helm had to relocate the line at significant added expense. Likewise, it is clear that Helm relied on Smile's exercise of authority and actually believed he possessed such authority; he structured his own conduct in accordance with such reliance and belief. Thus, we need only determine whether Lynch manifested her consent to or permitted Smiles to exercise authority, and whether Helms, acting in good faith, reasonably had reason to believe that Smiles possessed such authority.

■ Generally, any conduct by the principal which, if reasonably interpreted, would cause a third person to believe that the principal consents to the acts of the agent is sufficient to create apparent authority. *Century Financial Services Group, Ltd. v. First Bank*, 996 S.W.2d 92, 94 (Mo.App.1999); *Earl v. St. Louis University*, 875 S.W.2d 234, 238 (Mo.App.1994) (citing RESTATEMENT (SECOND) OF AGENCY § 27 (1957)). Typically, a principal creates apparent authority in three specific ways: acquiescence in an agent's prior acts, placing the agent in a position that carries generally recognized duties, and direct expressions to the third party. *Earl*, 875 S.W.2d at 238 (citing *Hamilton Hauling, Inc., v. GAF Corporation*, 719 S.W.2d 841, 847 (Mo.App.1986)).

The record does not indicate that Lynch made a direct expression to Helm identifying Smiles as having authority to speak on

her behalf. It does, however, indicate a combination of acquiescence in prior acts and her putting him in a position sufficient to create apparent authority. Lynch admits that Smiles spoke on her behalf as to matters regarding the property and its boundaries on several occasions preceding the events giving rise to the present dispute. She argues that these acts did not create apparent authority in her dealings with Helm because the record does not indicate that Helm was a party to the previous affairs. It does not matter because Smiles and Helm had much interaction, seemingly with Lynch's approval, in the weeks before the February 6, 1998, meeting when, according to Helm's evidence, Smiles gave Helm approval to bore north of the motel sign.

Smiles accompanied Lynch to a meeting with Helm and actively discussed the best location for the line and problems with placing it in its planned location. He showed Helm why the line could not be placed as proposed. He discussed various alternatives with Helm. Lynch permitted Smiles to speak and to act, in her presence and with her acquiescence, as if he possessed no less authority than she to make decisions concerning the line.

■ Lynch also placed Smiles in a position that carried with it the generally recognized duties exercised by him. Lynch argues that the positions of groundskeeper and housekeeper do not carry with them the authority exercised by Smiles. We do not disagree with her, but those were not the positions in which she placed Smiles during their interaction with Helm. We assess apparent authority according to the reasonable interpretations that a third party would make. The determinant of apparent authority is what a principal causes a third party to believe about the agent's authority. *Euclid Plaza Associates, L.L.C. v. African American Law Firm,*

*L.L.C.,* 55 S.W.3d 446, 450 (Mo.App.2001). Lynch did not hold Smiles out to Helm as being the housekeeper or groundskeeper. Had she done so, Smiles would have been cleaning the facility or tending the gardens rather than accompanying her to the roadside and speaking with Helm on her behalf as to the property boundaries and where the line should and could be located. Lynch held Smiles out as occupying a position more akin to a property manager or co-owner. A co-owner was, in fact, what Helm believed Smiles to be.

Lynch's actions would have caused a reasonable person to conclude that Smiles possessed authority to grant Helm permission to place the pipeline outside the planned location. Although Lynch was not present when Smiles authorized the new location, just a week before she had permitted Smiles to speak on her behalf concerning issues surrounding the pipeline. Helm and others had no reason to question Smiles' apparent authority when, during the later meeting, Smiles passed out maps, discussed boundary issues, and granted authority to place the line within an area depicted on the map that he produced.

Lynch knew of this later meeting because Smiles told her about it. She knew that he distributed the maps showing the enlarged easement area. She did nothing and said nothing that would have contradicted Helm's belief that Smiles possessed authority. When Helm began boring, she did not object or inquire as to why Helm was placing the line north of the sign.

Lynch vested Smiles with apparent authority. Having done so, she is responsible for his acts and agreements with Helm as if they were her own. *Nichols,* 851 S.W.2d at 661. While Lynch disputes her agent's authority, she does not otherwise argue that the evidence fails to support

any of Helm's three counterclaims. We deny Point I.[2]

In her second point, Lynch asserts that the circuit court erred in granting damages to Helm on all three counts of its counterclaim because it constituted duplicate recovery.[3] She reasons that, because the circuit court did not specify or allocate the damages among the counts, we must presume that it awarded damages on all three, thereby awarding duplicate damages for the same injury.

Lynch, of course, is correct that Helm was entitled to one recovery only and may not recover duplicate damages. *Trien v. Croasdale Construction Company, Inc.*, 874 S.W.2d 478, 481 (Mo.App.1994). The circuit court, however, did not award Helm duplicate damages. Helm's evidence established that it expended $19,566 in placing the line in its original location.[4] This is the sum that the circuit court awarded in its judgment. Helm received a single recovery sufficient to make him whole. We deny Point II.

We affirm the circuit court's judgment.

ROBERT G. ULRICH, Presiding Judge, and EDWIN H. SMITH, Judge, concur.

2. Helm argues that Lynch also ratified Smiles' actions. Ratification is "an express or implied adoption or confirmation, with knowledge of all material matters, by one person of an act performed on his behalf by another who at that time assumed to act as his agent but lacked authority to do so." *Springfield Land and Development Company v. Bass*, 48 S.W.3d 620, 628 (Mo.App.2001) (quoting *Wilks v. Stone*, 339 S.W.2d 590, 595 (Mo.App.1960)). Because we determined that authority existed, we do not reach this issue.

3. Lynch's point relied on suggested that she also believed the judgment was improper be-

cause the counts raised in Helm's counterclaim were inconsistent, overlapping, or conflicting. Her argument focused exclusively on the issue of duplicative damages. Claims of error presented without supporting argument preserve nothing for our review and are deemed abandoned. *Papineau v. Baier*, 901 S.W.2d 190, 192 (Mo.App.1995).

4. Lynch contended during oral argument that the basis for the circuit court's award was not discernible. We disagree. Helm's evidence was rather straightforward in establishing this as the amount of its damages.