Sandra BACH, Appellant/Cross–
Respondent,

v.

WINFIELD–FOLEY FIRE PROTEC-
TION DISTRICT, Respon-
dent/Cross–Appellant.

No. SC 89001.

Supreme Court of Missouri,
En Banc.

July 15, 2008.

Ryan R. Cox, Ryan R. Cox & Associates, L.L.C., St. Charles, MO, for Appellant/Cross–Respondent.

Gregory H. Wolk, Berg Borgmann Wilson & Wolk, LLC, St. Charles, MO, for Respondent/Cross–Appellant.

MARY R. RUSSELL, Judge.

The primary issue before this Court is whether a driver's negligence can be imputed to an owner-passenger of an automobile.

Sandra Bach ("Aunt") appeals from the trial court's judgment, which awarded her $15,000 for her injuries in an automobile accident in which the driver's, Samuel Madden's ("Nephew"), negligence was imputed to her. This Court finds that it was proper to impute Nephew's negligence to Aunt in that a principal/agent relationship

existed between them. The judgment of the trial court is affirmed.

## I. Facts

Aunt and Nephew were involved in an automobile accident when Nephew rear-ended a fire truck, which was parked partially in his lane with its emergency lights on as it was attending to a previous accident.[1] At the time of the accident, Nephew, age 16, was using Aunt's automobile to drive her to a widows' meeting. She was unable to drive herself because she did not have a license and did not know how to drive.[2]

Aunt sued Nephew and the District. She alleged that the District negligently failed to exercise the highest degree of care by parking a fire truck in a lane of traffic and failed to adequately warn her of the blocked roadway. This alleged negligence contributed to Nephew's automobile accident and caused Aunt to suffer injury and damages. In response, the District argued that Aunt's own negligence contributed to her injuries, as she and Nephew were engaged in a joint venture or joint journey at the time of the accident.[3] The District contended that Aunt was responsible for Nephew's, her agent's, contributory fault as if it were her own.

Aunt settled with Nephew for $25,000, and he was dismissed from the suit. Her case against the District went to trial. The jury found that she had suffered $100,000 in damages and returned a verdict apportioning 15 percent of the fault to the District and 85 percent of the fault to Aunt.[4] After the jury returned a verdict, but before the court entered its judgment, the District moved to apply the $25,000 she received from her settlement with Nephew against the judgment. The motion was overruled. The trial court entered judgment ordering the District to pay Aunt $15,000. After the denial of her motion for new trial, she appealed and the District cross-appealed. This Court has jurisdiction pursuant to Missouri Constitution article V, section 10, as the case was taken on transfer after opinion by the court of appeals.

## II. Submission of Jury Instructions

Aunt asserts that the trial court erred in giving Instructions number 7, 8, 9, 10 and Verdict A, and in refusing Instructions B, C, and "refused" Verdict A. She also argues that the trial court erred in overruling her motion for a new trial on the issue of liability because the evidence did not support the submission of comparative fault as to her because any negligence of the driver, Nephew, cannot be imputed to her.[5] Aunt contends that Nephew's negli-

1. The fire truck is owned by Winfield–Foley Fire Protection District ("the District"), the Respondent/Cross–Appellant in this case.

2. Since Nephew does not have an automobile, he and Aunt had agreed that when she needed to go somewhere, he would take her. In exchange, he was allowed to drive her automobile to school and to visit his friends.

3. The District misclassifies Aunt and Nephew's relationship as a joint venture. However, this doctrine is inappropriate because there was no community of pecuniary interest between Aunt and Nephew in this journey. *See Manley v. Horton*, 414 S.W.2d 254, 260 (Mo.1967).

4. The jury had been instructed that in assessing any percentage of fault against Aunt, Nephew's fault should be attributed to her.

5. The instructions at issue presumed comparative fault and imputed negligence to Aunt based on Nephew's negligence. Instruction No. 9 stated:

    In your verdict, you must assess a percentage of fault to [Aunt], whether or not [the District] was partly at fault, if you believe:
    First, [Nephew] failed to keep a careful lookout, and
    Second, [Nephew] was thereby negligent, and

gence cannot be imputed to her since she was a passenger in the automobile and, despite owning the automobile, she did not have a mutual right to control the automobile as she did not know how to drive.

Whether a jury was properly instructed is a question of law that this Court reviews *de novo*. *Harvey v. Washington*, 95 S.W.3d 93, 97 (Mo. banc 2003). Review is conducted in the light most favorable to the submission of the instruction, and if the instruction is supportable by any theory, then its submission is proper. *Oldaker v. Peters*, 817 S.W.2d 245, 251–52 (Mo. banc 1991). Instructional errors are reversed only if the error resulted in prejudice that materially affects the merits of the action. *Ploch v. Hamai*, 213 S.W.3d 135, 139 (Mo.App.2006).

In deciding whether the submitted instructions supported comparative fault as to Aunt, the first issue to be determined is whether a principal/agent relationship existed between Aunt and Nephew.

Agency is the fiduciary relationship resulting from the manifestation of consent by an agent to a principal that the agent will act on the principal's behalf and subject to his control. *State ex rel. Ford Motor Co. v. Bacon*, 63 S.W.3d 641, 642 (Mo. banc 2002); RESTATEMENT (SECOND) OF AGENCY sec. 1 (1958). It is a relationship where the principal only has the right to control the ends of the agent's activities; the principal does not have the right to control or direct the physical movements of her agent in accomplishing the final result. *See Douglas v. Nat'l Life & Accident Ins. Co. of Nashville, Tenn., et al.*, 236 Mo.App. 467, 155 S.W.2d 267, 271 (1941). Neither a contract nor an express appointment and acceptance is necessary, but consent may be manifested and the relationship may be created by words and conduct. *Groh v. Shelton*, 428 S.W.2d 911, 916 (Mo.App.1968). Compensation is not essential to the creation or existence of the relationship; agency may be a wholly gratuitous undertaking. *Id.* An agency relationship may still exist even if the parties did not intend to create the legal relationship or to subject themselves to the liabilities that the law imposes as a result. *Leidy v. Taliaferro*, 260 S.W.2d 504, 505 (Mo.1953).

A principal is responsible for the acts of her agent, as long as the agent is acting with actual authority. *Lynch v. Helm Plumbing & Elec. Contractors, Inc.*, 108 S.W.3d 657, 660 (Mo.App.2002). Actual authority is authority that the principal has given, either expressly or impliedly, to the agent, empowering the agent to act on the principal's behalf. *Hyken v. Travelers Ins. Co.*, 678 S.W.2d 454, 457 (Mo.App. 1984). Specifically, when a person operates an automobile of another while the owner is a passenger, acquiescing in the operation, there is a presumption that the driver is the agent of the owner and within the scope of his agency. *Perricone v. De-Blaze*, 655 S.W.2d 724, 725 (Mo.App.1983) (citing *Campbell v. Fry*, 439 S.W.2d 545, 548 (Mo.App.1969)).

In order to establish a principal/agent relationship between Aunt and Nephew, the principal must have a "right to control" the agent. *See Gardner v. Simmons*, 370 S.W.2d 359, 362 (Mo.1963). Aunt argues that she did not have the "right to control" Nephew. She cites to *Manley v. Horton*, 414 S.W.2d 254 (Mo. 1967), and *Stover v. Patrick*, 459 S.W.2d 393 (Mo. banc 1970), to argue that there is

---

Third, as a direct result of such negligence [Aunt] sustained damage.

In assessing any such percentage of fault against [Aunt], you must consider the fault of [Nephew] as the fault of [Aunt].

a conflict in Missouri law regarding an owner-passenger's right to control an automobile. Aunt incorrectly contends that *Manley* held that ownership of an automobile automatically gives a passenger a right to control the automobile and, in contrast, *Stover* held that joint ownership of a vehicle in which the owner is riding as a passenger does not establish as a matter of law the owner's right to control the vehicle. These opinions, however, are not in conflict as Aunt mischaracterizes their holdings.

In *Manley*, the passenger Manley was injured in an automobile accident when the automobile he was riding in was hit by another automobile occupied by driver Horton and passenger Pruwitt. 414 S.W.2d at 255. Manley sued both Horton and Pruwitt, and Pruwitt filed a motion for a directed verdict, which was sustained. *Id.* at 255–56. On appeal, Manley argued that the directed verdict was improperly sustained because Pruwitt was liable under a theory of joint venture as a matter of law. *Id.* at 259–60. The court did not find that a joint venture existed as a matter of law, but determined that there was evidence indicating that Pruwitt may have been involved in a joint venture. *Id.* at 260–61. It stated that even though Pruwitt was asleep at the time of the accident, this did not necessarily eliminate his right of control, and the issue of joint venture should have been submitted to the jury. *Id.*

In *Stover*, driver-husband and passenger-wife were injured in an automobile accident when defendant's automobile collided with theirs. 459 S.W.2d at 394. Husband was found to have been contributorily negligent in causing the accident. *Id.* at 397. Defendant argued that since

Wife co-owned the vehicle she was riding in, her recovery should be barred by Husband's contributory negligence. *Id.* at 397–98. This Court found that mere joint ownership of an automobile, standing alone, was not sufficient to impute the negligence of a driver-spouse to a passenger-spouse. *Id.* at 401.

These cases are not in conflict. *Manley* speaks to the issue of whether the jury should have been permitted to decide if a joint venture existed, while *Stover* addresses whether negligence can be imputed to a passenger-spouse based on mere evidence of co-ownership of an automobile. The dissent emphasizes *Stover*'s conclusion that co-ownership of an automobile does not give a realistic right of control over its movement to a passenger-owner. That holding, however, is limited to where there is an "absen[ce of] evidence of other facts which establish a basis for imposing liability on the passenger-wife for acts of her driver-husband." [6] *Id.*

Unlike in *Stover*, Aunt and Nephew were not co-owners of the automobile; Aunt was the sole owner and Nephew was driving at her authorization. Nephew had agreed to drive Aunt wherever she needed to go and, in exchange, he was allowed personal use of the automobile. When he was driving her, it was at Aunt's behest and subject to her direction as to where to go. Liability is not based here on mere ownership of the vehicle. In light of all these facts, there was sufficient evidence to establish a basis for finding a principal/agent relationship to impute liability from Nephew to Aunt. As such, *Stover* is not applicable to Aunt's case.

Although Aunt and Nephew may not have intended to create a principal/agent

---

**6.** The dissent asserts that *Stover* does not suggest that this rule should only be limited to a spousal relationship. As this is not the issue before the Court, it is not necessary to discuss the breadth of such applicability.

relationship, the evidence indicates that such a relationship existed between them. In reality, Aunt did not control every physical movement of Nephew while he was driving her automobile, but she did have the right to control, and did so, by directing when the trip occurred and the ends of his activities-the destination of the trip. Under the laws of agency, Aunt, as principal, did not need to control or direct every movement of her agent, Nephew, only the accomplishment of the final result. *See Douglas,* 155 S.W.2d at 271.

The dissent relies on *Douglas* to support its contention that "the principal is generally not liable for the actions of an agent when the principal has no realistic right of control over those actions." It fails to recognize that this is true "unless the act was done in the manner directed or authorized by the principal or the result was one intended or authorized by the principal." *Douglas,* 155 S.W.2d at 271. At the time of Nephew's accident, he was driving Aunt to her club meeting as he had been expressly authorized and directed to do. Despite her inability to drive and her lack of a license, she had the right to control the automobile trip and he was acting in accordance with that direction. As such, a principal/agent relationship was created and Aunt is responsible for Nephew's actions.[7]

In reviewing contested jury instructions in the light most favorable to their submission, the instructions at issue are supportable under the theory of agency. Under the facts of this case, the evidence is sufficient to support the conclusion that Aunt and Nephew were operating as a principal

and agent. The trial court did not err in the submission of the instructions imputing Nephew's negligence to Aunt or in overruling Aunt's motion for a new trial.

### III. The District's Request to Amend its Answer

■ On cross-appeal, the District argues the trial court erred and abused its discretion in refusing to permit it to amend its answer and assert a right of set-off and in refusing to offset its judgment by $25,000, the amount of Aunt's settlement with Nephew. When Aunt filed her Second Amended Petition for Damages, the District knew that she had settled her case against Nephew for $25,000. The court entered an order allowing the District to file responsive pleadings to Aunt's petition. It timely filed an answer, but failed to allege a right to set-off. Aunt's case proceeded to trial, and the jury delivered a verdict. After the verdict was read, the District orally moved to apply the $25,000 settlement against the verdict. The court overruled the motion because it had not pleaded or proved the set-off as an affirmative defense. Rule 55.08; *Norman v. Wright,* 153 S.W.3d 305, 306 (Mo. banc 2005) ("[A] reduction under section 537.060 must be pleaded and proved as an affirmative defense."). The District then moved for leave to amend its answer and apply the settlement amount to reduce the judgment against it. The trial court overruled the motion.

■ It is within the trial court's broad discretion to allow or disallow amendments to pleadings. *Lester v.*

---

7. The dissent states that even if Aunt had a right to control Nephew, there is no basis for concluding that Nephew had any authority to alter Aunt's legal relationship with a third party, and thus, an essential element required to find a principal/agent relationship is missing. The dissent, however, cites no support

for this contention. When an agent acts in accordance with his instructions from his principal, the agent has the power to affect the legal relations of the principal to the same extent as if the principal has so acted. RESTATEMENT (SECOND) OF AGENCY sec. 12 cmt. a (1958).

*Sayles,* 850 S.W.2d 858, 869 (Mo. banc 1993). An appellate court will not disturb a trial court's denial of a motion to amend a pleading unless it is clearly erroneous. *In re Estate of Goldschmidt,* 215 S.W.3d 215, 223 (Mo.App.2006). This Court considers the following factors when determining whether the trial court erred in denying leave to amend: (1) the hardship to the moving party; (2) the moving party's reason for omitting the matter from the original pleadings; and (3) any injustice that would result to the nonmoving party if the court granted leave to amend. *Lester,* 850 S.W.2d at 869.

The District relies on *Hoover v. Brundage–Bone Concrete Pumping, Inc.,* 193 S.W.3d 867 (Mo.App.2006), to support its argument that the trial court should have granted it leave to amend its answer. In *Hoover,* the court found that the trial court abused its discretion in refusing to allow defendants to amend their answer after trial to plead the defense of set-off. *Id.* at 872–73. The District's case, however, is distinguishable in that the defendants in Hoover did not learn of plaintiff's section 537.060 settlement until after trial due to plaintiff's failure to supplement their interrogatory answers. *Id.* at 872. Since they had no knowledge of the plaintiff's settlement, the Hoover defendants could not have asserted a right of set-off in their pleadings prior to trial. The District has no such defense. The District concedes that it had been notified of Aunt's settlement prior to trial and had the opportunity to allege a right to set-off in its answer to Aunt's Second Amended Petition, but failed to do so. Under these circumstances, the trial court's overruling of the District's motion to amend its answer was not clearly erroneous. The trial court, therefore,

did not abuse its discretion in refusing to permit the District to amend its answer or in refusing to offset the $25,000 settlement payment against the judgment.

IV. Conclusion

The judgment of the trial court is affirmed.[8]

PRICE, LIMBAUGH and BRECKENRIDGE, JJ., concur.

TEITELMAN, J., dissents in separate opinion filed.

STITH, C.J., and WOLFF, J., concur in opinion of TEITELMAN, J.

RICHARD B. TEITELMAN, Judge, dissenting.

I respectfully dissent. The jury should not have been instructed that it must impute Nephew's negligence to Aunt. The majority concludes otherwise, and the net result is that an innocent bystander is denied full recovery for her injuries based upon a legal construct that has no application in this case.

There are three elements that must be shown before an agency relationship can be established: (1) the principal must have the right to control the conduct of the agent with respect to matters entrusted to the agent; (2) the agent must be a fiduciary of the principal; and (3) the agent must be able to alter legal relationships between the principal and a third party. *State ex rel. Ford v. Bacon,* 63 S.W.3d 641, 642 (Mo. banc 2002). The absence of any one of these three elements defeats a claim that an agency relationship exists. *State*

---

**8.** The District also argues on cross-appeal that if the trial court's judgment is reversed and Aunt's claim is remanded for a new trial as to liability, the cause should also be re-manded for a new trial as to damages. Since the trial court did not err in its determination of liability, and its judgment will not be reversed, this point need not be addressed.

*ex rel. Bunting v. Koehr,* 865 S.W.2d 351, 353 (Mo. banc 1993).

The majority acknowledges that Aunt had no realistic right of control over how Nephew drove the vehicle at any given moment. This acknowledgment is compelled based on the simple facts that Nephew was driving and Aunt did not know how. Despite the fact that Aunt was not driving and did not know how, the majority concludes that Aunt is liable for Nephew's negligence in the moment before the accident because she controlled the "destination of the trip." There is a significant incongruity between acknowledging that Aunt had no realistic control over how Nephew drove the vehicle at any given moment while, at the same time, effectively holding Aunt liable for the very actions that the majority recognizes she could not control.

This incongruity stems from the majority's reliance on *Douglas v. Nat'l Life & Accident Ins. Co. of Nashville, Tenn.,* 236 Mo.App. 467, 155 S.W.2d 267, 271 (1941), for the proposition that Nephew's negligence could be imputed to Aunt if she merely controlled the final result; i.e., the destination of the trip. *Douglas* does not hold that the law of agency permits the negligence of one person to be imputed to another if the purported principal only controls the final result that the agent is to achieve. To the contrary, the *Douglas* case distinguishes between a principal/agent relationship in which the principal is not responsible for the negligence of the agent and a master/servant relationship in which the principal may be liable for the negligence of the servant under a *respondeat superior* theory:

> If to the relationship of principal and agent there is added the right of the principal to control the agent's physical

movements with respect to the details of the performance of any part of the service for which he is engaged, then the agent becomes a servant in the doing of the things over which such right of control is reserved to the principal; and the principal becomes subject to liability for any negligence of his servant in that regard under the ordinary application of the doctrine of respondeat superior .... (citations omitted). But *if the relationship is such that the principal has no right to control or direct the physical movements of his agent in accomplishing the final results* for which he is employed, then the agent is merely an agent and not a servant; and (save for matters with which we are not presently concerned) *the principal will not be liable for physical harm or injury caused by the negligent physical conduct of his agent* (who is not a servant) during the performance of the principal's business, "unless the act was done in the manner directed or authorized by the principal or the result was one intended or authorized by the principal." *Kourik v. English,* 340 Mo. 367, 100 S.W.2d 901, 905. (Emphasis added).

*Id.* at 271. In other words, the principal is generally not liable for the actions of an agent when the principal has no realistic right of control over those actions.

Aunt, as acknowledged by the majority, had no realistic right of control over Nephew's actions in the moments leading up to the accident. The fact that Aunt controlled the destination of the trip—a widowers' meeting in Troy, Missouri—is not sufficient to support the conclusion that Aunt and Nephew were in a principal/agent relationship that warrants holding Aunt liable for Nephew's negligence.[1]

---

1. Even if it were conceded for the sake of argument that Aunt did have the right to

control Nephew and that there was a fiduciary relationship, there is no basis for conclud-

This conclusion is fully supported by *Stover v. Patrick,* 459 S.W.2d 393 (Mo. banc 1970). Prior to *Stover,* Missouri law held that "negligence of the driver of an automobile is imputable to an occupant and bars his recovery." *Id.* at 398. In *Stover,* the Court undertook "to re-examine this question." *Id.* at 399. After reviewing cases from other jurisdictions that did not find that mere ownership gave a passenger the right of control, this Court concluded that "co-ownership of an automobile does not give a realistic right of control over its movement to a passenger-owner and that absent evidence of other facts which establish a basis for imposing liability on the passenger-wife for acts of her driver-husband, the negligence of the latter should not be imputed to the former merely because of joint ownership of the vehicle." *Id.* at 401.

The principal opinion limits the application of *Stover* to joint ownership cases. Although the facts in *Stover* related to joint ownership by a husband and wife, nothing about the rule announced in that case suggests it should be so limited. The rationale underlying *Stover* is that passengers who happen also to be owners of the vehicle are not liable for the negligence of the driver on the sole basis of their ownership. Indeed, a federal district court in Missouri recently recognized that *Stover* "held that a passenger in a vehicle does not realistically have control of the vehicle merely because of ownership." *Littleton v. McNeely,* No. 05–4313–CV–C–NKL, 2007 WL 3027578 (W.D.Mo. Oct. 15, 2007) (overruling motion for judgment as matter of law on basis that owner had control by sole virtue of ownership). The majority's conclusion is not consistent with *Stover.*

Moreover, the precise jury instruction that Aunt is objecting to in this case, which required Nephew's negligence to be imputed to her, was also given in the trial court in *Stover.* This Court declared in *Stover* that, on remand, "a contributory negligence instruction based on negligence of [the driver] should not be given." *Id.* Rather than being distinguishable, the rationale of *Stover* requires reversal and remand unless it is to be overruled.

Aunt was entitled to a jury determination of the factual underpinnings of the principal/agent theory employed to deny her full recovery for her injuries. The existence of an agency relationship requires an assessment of the facts of each case and, for that reason, is regarded as "a question of fact to be determined by the jury when, from the evidence adduced on the question, there may be a fair difference of opinion as to the existence of the relationship." *Johnson v. Bi–State Development Agency,* 793 S.W.2d 864, 867 (Mo. banc 1990). As the preceding discussion demonstrates, there are certainly grounds for a fair difference of opinion as to whether Aunt and Nephew were in a principal/agent relationship when Nephew drove her to the widowers' meeting. The instructions in this case erroneously treated this factual question as a foregone conclusion, thus depriving Aunt of a factual determination by a jury of her peers.

I would reverse and remand for a new trial.

---

ing that Nephew had any authority to alter Aunt's legal relationship with a third party. In either case, an essential element required to find a principal/agent relationship is missing.