

# In the
# Missouri Court of Appeals
## Western District

MARLON PRICE AND
MICHELLE PRICE,

               **Respondents,**

v.

SHIRLEY THOMPSON,

               **Respondent,**
and

YOUNG AMERICA INSURANCE
COMPANY,

               **Appellant.**

**WD83002**

**OPINION FILED:**

**September 15, 2020**

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Jennifer Marie Phillips, Judge**

**Before Division Three:**
**Gary D. Witt, P.J., Lisa White Hardwick, and Thomas N. Chapman, JJ.**

Young America Insurance Company ("Young America") appeals from the judgment of

the Jackson County Circuit Court in favor of Marlon and Michelle Price in their action against

Shirley Thompson for claims arising out of a motor vehicle accident.  Young America,

Thompson's liability insurer, intervened in the action pursuant to section 537.065.2.[1]  It raises six

points on appeal.  The judgment is affirmed.

---

[1] All statutory references are to RSMo 2016 as updated through RSMo Cum. Supp. 2019 unless otherwise indicated.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

This case involves a motor vehicle accident between a motorcycle operated by Marlon Price[3] and a Volkswagen Passat owned or leased by Shirley Thompson. Prior to the accident, Young America had issued an automobile liability insurance policy to Thompson identifying the Passat as the insured vehicle.

On July 22, 2016, Thompson went to the home of Earnest Davis and asked him to drive her in her Passat to her dental appointment in Independence. Thompson is diabetic and insulin dependent and some days does not feel well enough to drive due to her condition, and such was the case that day. At the time of the accident, Thompson had known Davis for about a year. Davis had been Thompson's driver in the past, and as a tradeoff, Thompson would help Davis out with "whatever he needed."

That day, Thompson gave Davis the keys to her Passat so that he could drive her to her dental appointment. On the way there, Davis drove to a QuikTrip on the west side of Sterling Avenue in Independence. Thompson did not object to Davis's making the stop at the QuikTrip. As they were exiting the QuikTrip parking lot, Davis drove the Passat in the lane designated for turning northbound (left) onto Sterling Avenue (which was the direction to Thompson's dentist's office). Despite being in the proper lane to make the left turn (to the north), Davis nevertheless initially began turning right to head southbound. Davis then changed course, and turned left toward the northbound lanes, into the path of Marlon Price, who was operating a motorcycle in

_____

[2] In reviewing a bench-tried case, the appellate court views the facts in the light most favorable to the judgment. *Sauvain v. Acceptance Indem. Ins. Co.*, 437 S.W.3d 296, 299 n.2 (Mo. App. W.D. 2014).

[3] For simplicity, we will call Marlon and Michelle Price by their first names when referring to them individually and by their surname when referring to them collectively. No disrespect or undue familiarity is intended.

the southbound lanes of Sterling Avenue. Because there was oncoming traffic in the northbound lanes, Marlon laid down his motorcycle in the southbound lanes to avoid hitting the Passat and getting thrown into traffic.

At the time of the accident, Davis did not have a valid driver's license. He had multiple convictions in Missouri and Indiana for driving without a license and driving while suspended. Thompson misled the police officer who responded to the scene, by indicating that she was driving the Passat at the time of the accident. In her deposition testimony (which was introduced at trial) Thompson indicated that she was not confused about who was driving that day; acknowledged that she knew who was driving; but admitted that, because it was her car and her insurance, she told the officer on the scene that she was driving. She further testified that she never asked Davis whether he had a driver's license when she asked him to drive for her and just assumed that he did.

Following the accident, Davis continued on, and drove Thompson in her Passat to her dental appointment. After the appointment, Davis drove Thompson back to her house. Thompson then drove Davis to his house and dropped him off.

Marlon sustained injuries to his leg and knee as a result of the accident. He was taken by ambulance from the scene to the hospital, where he was diagnosed with multiple fractures of his tibia and fibula and underwent surgery where two plates, screws, and pins were placed in his leg. Marlon was subsequently hospitalized in September 2016 after developing a deep vein thrombosis that ultimately lead to a pulmonary embolism. In October 2016, he was again hospitalized with another pulmonary embolism. According to Marlon's surgeon, the deep vein thrombosis and pulmonary embolisms in September and October were directly and proximately

3

caused by the injuries he sustained in the July 22, 2016 accident. As a result of his injuries, Marlon is required to take (for the rest of his life) anti-coagulant medication. He also suffers from traumatic arthritis as a result of the injuries to his knee; and, according to his surgeon, it is reasonably certain that Marlon will require a total knee replacement in the future as a direct and proximate result of the accident. The Prices testified at trial regarding Marlon's pain, physical limitations, and emotional distress as a result of the injuries he sustained in the accident as well as the effect the accident had on their marital relationship.

The Prices filed their suit for damages against Thompson, which included six counts. Count I was a negligence claim by Marlon against Davis. Counts II through V were claims by Marlon against Thompson for respondeat superior (vicarious) liability for Davis's negligence, negligence, negligent entrustment, and negligence per se. Count six was a loss of consortium claim by Michelle against Thompson and Davis. The Prices voluntarily dismissed Davis without prejudice.

During the course of the underlying lawsuit, Young America asserted a reservation of rights based upon Thompson's and Davis's lack of cooperation in the lawsuit. It also filed a declaratory judgment action against Thompson, Davis, and the Prices in the Jackson County Circuit Court. Thompson subsequently entered into a section 537.065 agreement with the Prices. Young America was provided notice of the agreement on March 29, 2018; filed a motion to intervene on April 17, 2018, pursuant to section 537.065.2; and the trial court granted Young America's motion to intervene on May 15, 2018.

The case was tried to the court on April 2, 2019. The Prices presented portions of Thompson's videotaped deposition, their testimony and the testimony of Marlon's surgeon, and

4

several exhibits including facts stipulated by Thompson and Young America. Young America participated in the trial, presenting an opening statement and closing argument and cross-examining the Prices' witnesses. Neither Thompson nor Young America presented evidence. After completion of the Prices' evidence, pursuant to Rule 73.01(b), Young America filed a motion for judgment on the grounds that, upon the law and facts presented, the Prices were not entitled to relief. Young America's Rule 73.01(b) motion was denied by the trial court.

On May 20, 2019, the trial court entered judgment in favor of Marlon against Thompson on the basis of respondeat superior (vicarious) liability for Davis's negligence, negligent entrustment, and negligence per se; and awarded him damages in the amount of $3,500,000. It further entered judgment in favor of Michelle on Count six—loss of consortium—and awarded her damages in the amount of $100,000. This appeal by Young America followed.

## STANDING

Initially, the Prices argue that Young America does not have standing to appeal the trial court's judgment because it is not a party aggrieved by the judgment. Specifically, they claim that the portions of the judgment against Thompson that Young America seeks to challenge on appeal do not operate directly, immediately, and prejudicially on its personal or property rights or interests because Young America has denied coverage and its liability under its policy has not yet been determined.

Section 512.020 affords the right to appeal to "[a]ny party to a suit aggrieved by any judgment of any trial court in any civil cause." "A party who has not been aggrieved by a judgment has no right or standing to appeal." *T.V.N. v. Mo. State Highway Patrol Criminal Justice Info. Servs*, 592 S.W.3d 74, 77 (Mo. App. W.D. 2019) (internal quotes and citation

5

omitted).  "A party cannot assert trial court error for actions by which it was not aggrieved."

*Charnisky v. Chrismer*, 185 S.W.3d 699, 702 (Mo. App. E.D. 2006).  "A party is aggrieved

'when the judgment operates prejudicially and directly on his personal or property rights or

interests and such effect is immediate and not merely a possible remote consequence.'"

*Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.*, 155 S.W.3d 50, 57 (Mo. banc 2005)

(quoting *Shelter Mut. Ins. Co. v. Briggs*, 793 S.W.2d 862, 863 (Mo. banc 1990)).

In *Knight by and through Knight v. Knight*, No. WD 82860, 2020 WL 3966759 (Mo.

App. W.D. July 14, 2020), this court recently addressed whether a liability insurance company

that intervened in a lawsuit between a third party and its policyholders pursuant to section

537.065 was an aggrieved party under section 512.020 and had standing to appeal the judgment

against its policyholders.  It noted that before the 2017 amendment to section 537.065, Missouri

courts had repeatedly held that a liability insurer that refused to defend its insured did not have

the right to intervene in an underlying tort action filed against the insured by a third party

because the insurer had no direct interest in such lawsuit.  *Id.* at *4.  Section 537.065.2 currently

provides:

> Before a judgment may be entered against any tort-feasor after such tort-feasor
> has entered into a contract under this section, the insurer or insurers shall be
> provided with written notice of the execution of the contract and shall have thirty-
> days after receipt of such notice to intervene as a matter of right in any pending
> lawsuit involving the claim for damages.

This court explained that by enacting new section 537.065.2, the General Assembly necessarily

rejected the proposition that liability insurers lack any direct interest in tort litigation against their

insureds:

> the legislature has declared that, where the insured as entered into an agreement
> limiting the assets against which a claimant may seek recovery, a liability

6

insurance carrier has a sufficient interest in the determination of the insured's liability to support the insurer's intervention in the underlying litigation, as a matter of right.

*Knight*, 2020 WL 3966759, at \*4. It noted that the legislature presumably recognized that, where some or all of the insured's personal assets are protected from execution by the section 537.065 agreement, the insured may have little incentive to assert a vigorous defense to an injured party's claims and may even be contractually prohibited from mounting a defense. *Id.* Thus, in light of the enactment of new section 537.065.2, courts may no longer deny a liability insurer intervention in an underlying tort action solely on the basis that the insurer has no direct interest in the lawsuit. *Id.* at \*5.

> This court continued:

> By the same token, it would be inconsistent with [section] 537.065.2 for courts to hold that a liability insurer, who meets the statute's conditions for intervention, lacks the right to appeal a judgment against the insured on the basis that the insurer is not aggrieved because an adverse judgment does not operate directly and prejudicially on the insurer's personal or property rights or interests.

*Id.* (internal quotes and citation omitted). So the same statutorily-recognized interest that supports an insurer's intervention in the trial court likewise supports the insurer's right to prosecute an appeal where its arguments in the trial court were unsuccessful. *Id.* Like the insurer in *Knight*, Young America intervened in the underlying lawsuit filed against its insured by an injured third party and has standing to appeal the trial court's judgment against its insured.[4]

## POINTS ON APPEAL

Young America raises six points on appeal. Its first five points challenge the trial court's

---

[4] During oral argument, the Prices conceded that it was not necessary to address standing in light of *Knight*. The issue is addressed, however, because an appellate court has an obligation, acting *sua sponte* if necessary, to determine its authority to hear an appeal that comes before it. *First Nat'l Bank of Dieterich v. Pointe Royale Prop. Owners' Assoc., Inc.*, 515 S.W.3d 219, 221 (Mo. banc 2017).

judgment in favor of Marlon on his claims against Thompson for negligent entrustment (point one), negligence per se (point two), and vicarious liability for Davis's negligence (points three, four, and five). Because the judgment in favor of Marlon is supported on the claim that Thompson was vicariously liable for Davis's negligence, points one and two challenging the alternative theories for relief of negligent entrustment and negligence per se need not be addressed.[5] Point six challenges the judgment in favor of Michelle for loss of consortium.

### Standard of Review

In a court-tried case, the trial court's judgment will be affirmed on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Claims that there is no substantial evidence to support the judgment and that the judgment is against the weight of the evidence necessarily involve review of the trial court's factual determinations. *Pearson*, 367 S.W.3d at 43. An appellate court will overturn a trial court's judgment under these fact-based standards of review only when it has a firm belief that the judgment is wrong. *Id.*

Claims that the judgment erroneously declares or applies the law involve review of the propriety of the trial court's construction and application of the law. *Id.* An appellate court reviews questions of law *de novo*. *Id.* In other words, the appellate court reviews the trial court's determination independently without deference to its conclusions. *Id.* at 43-44.

---

[5] *See Eversole v. Woods Acquisition, Inc.*, 135 S.W.3d 425, 430 (Mo. App. W.D. 2004) (where judgment was supported on claim of *res ipsa loquitur* negligence, appellant's challenge to trial court's grant of alternative relief on breach of implied warranty claim did not need to be addressed).

8

**Agency Liability**

In points three, four, and five, Young America contends that the trial court erred in imputing Davis's negligence to Thompson based on the existence of an agency relationship.[6] Where an agency relationship exists, the wrongful acts of an agent can generally be imputed to the principal. *Cent. Trust and Inv. Co. v. Signalpoint Asset Mgmt., LLC*, 422 S.W.3d 312, 323 (Mo. banc 2014). "Agency is the fiduciary relationship resulting from the manifestation of consent by an agent to a principal that the agent will act on the principal's behalf and subject to his or her control." *Id.* For a principal-agent relationship to exist, the principal must have the "right to control" the agent. *Id.* (internal quotes and citation omitted). A principal only has the right to control the ends of the agent's activities or the final result, not every physical movement of the agent in accomplishing the final result. *Bach v. Winfield-Foley Fire Prot. Dist.*, 257 S.W.3d 605, 608 (Mo. banc 2008). An agency relationship may be created by words and conduct; a contract or express appointment is not necessary. *Id.* An agency relationship may exist even if the parties did not intend to create the legal relationship. *Id.*

A principal is responsible for the acts of an agent when the agent is acting with actual authority. *Id.* Actual authority is authority that the principal has given, either expressly or impliedly, empowering the agent to act on the principal's behalf. *Id.* "Specifically, when a person operates an automobile of another while the owner is a passenger, acquiescing in the operation, there is a presumption that the driver is the agent of the owner and within the scope of his agency." *Id.* A passenger can be held liable for the negligent operation of a vehicle only when the passenger demonstrates a realistic right of control of the vehicle. *Steele v. Shelter Mut.*

---

[6] Young America does not challenge on appeal the trial court's conclusion that Davis was negligent in his operation of the automobile.

9

*Ins. Co.*, 400 S.W.3d 295, 299 (Mo. banc 2013). "[T]he 'realistic right of control' test requires a practical showing of an actual ability to control the driver, beyond a showing of theoretical right of control over the vehicle via ownership." *Id.* at 300 (internal quotes and citation omitted).

In point three, Young America contends that the trial court erroneously applied the law in finding a presumption of agency because any presumption was overcome and eliminated by evidence at trial. Specifically, Young America argues that evidence of Thompson's inability to drive the vehicle or to direct its movements, and evidence that Davis drove to QuikTrip for his own benefit (instead of doing what Thompson had requested), overcame the presumption of agency.

While it is true that the trial court noted in its judgment that when a person operates an automobile of another while the owner is a passenger, there is a presumption that the driver is the agent of the owner, the trial court did not find Thompson liable for Davis's negligence based solely Thompson's ownership of the car and the presumption of agency it entailed. Rather, the trial court imputed Davis's negligence to Thompson based on the actual existence of a principal/agent relationship between the two and Thompson's right to control Davis.

The trial court made the following findings of fact relevant to the agency issue:

Prior to the trip that led to the crash, Defendant Shirley Thompson requested that Earnest Davis drive her Volkswagen Passat and take her to her dentist appointment in Independence, Missouri. Defendant Thompson gave Earnest Davis the keys to the Volkswagen Passat and gave him permission to drive the Volkswagen Passat to her dentist's office. Defendant Thompson determined when the trip to her dentist would occur and at all times, Defendant Thompson had the right to end the trip to her dentist office and end Earnest Davis' right and ability to continue operating the Volkswagen Passat. At all times Defendant Thompson controlled the final destination of the trip—her dentist office. Further, Defendant Thompson determined that the trip to the dentist would occur and went to Earnest Davis's home to have him be her driver.

10

Defendant Thompson testified, and it was not contested, that Earnest Davis had driven Defendant Thompson to her appointments at her request in the past. As a trade-off for Earnest Davis driving Defendant Thompson to her appointments, Defendant Thompson would help Earnest Davis out with whatever he needed.

At the time of the collision, Earnest Davis was driving Defendant Shirley Thompson to her dentist appointment at her specific request and for her benefit.

Defendant Thompson authorized and did not object to Earnest Davis stopping at the QuikTrip. Defendant Thompson testified that stopping at QuikTrip is something people do while on the road.

Following the collision, Earnest Davis continued driving Defendant Shirley Thompson to her dentist appointment.

The trial court made the following relevant conclusions of law:

The Court finds that Defendant Shirley Thompson controlled the final destination of the trip—her dentist's office.

At the time of the collision, Earnest Davis was acting in accordance with the instructions of Defendant Thompson by driving her to her dentist office. As such, Earnest Davis had the power to affect the legal relations of Defendant Thompson to the same extent as if she had acted.

At the time of the July 22, 2016 motor vehicle collision, an agent/principal relationship existed between Earnest Davis and Defendant Thompson and Earnest Davis was acting within the course and scope of his agency with Defendant Thompson.

The trial court did not erroneously apply the law in finding an agency relationship between Thompson and Davis.

This case is very similar to the Missouri Supreme Court case, *Bach v. Winfield-Foley Fire Protection*. In *Bach*, the Court addressed when a driver's negligence can be imputed to an owner-passenger of an automobile. 257 S.W.3d at 606. In that case, Aunt and sixteen-year-old Nephew were in an automobile accident when Nephew rear-ended a fire truck, which was parked partially in his lane while attending to a previous accident. *Id.* at 607. At the time of the

11

accident, Nephew was using Aunt's automobile to take her to a meeting. *Id.* Aunt was unable to drive herself because she did not have a license and did not know how to operate a motor vehicle. *Id.*

Aunt sued Nephew and the Fire District, and in response, the Fire District argued that Aunt was responsible for Nephew's (her agent's) contributory fault as if it were her own. *Id.* Aunt settled with Nephew, and he was dismissed from the suit. Her case against the Fire District went to trial, and the jury found that she suffered $100,000 in damages and apportioned fifteen percent of the fault to the Fire District and eighty-five percent of the fault to Aunt. *Id.*

On appeal, Aunt contended that Nephew's negligence should not have been imputed to her because, even though she owned the automobile, she had no right to control it as she did not know how to drive. *Id.* at 607-08. The Missouri Supreme Court disagreed, finding that a principal/agent relationship existed to impute liability from Nephew to Aunt.[7] *Id.* at 609-10. It explained that, at the time of the accident, Nephew was driving Aunt to her club meeting as he had been expressly authorized and directed to do. *Id.* at 610. Even though she did not control every physical of movement by Nephew, Aunt had the right to control, as she directed when the trip occurred and the ends of the activity (the destination of the trip). *Id.* "Despite her inability to drive and her lack of a license, [Aunt] had the right to control the automobile trip and [Nephew] was acting in accordance with that direction." *Id.*

In this matter, Thompson authorized Davis to operate her car, directed when the trip occurred, and determined the destination of the trip (Thompson's dentist's office). Thompson had the right to control the final result of the automobile trip, beyond her mere ownership of the

---

[7] The Court noted that liability was not based merely on ownership of the automobile. *Id.* at 609.

automobile, and Davis was operating the vehicle pursuant to that directive when the accident occurred. Thompson's inability to drive that day (due to her diabetic condition) and the stop at QuikTrip along the way (to which Thompson did not object) did not interrupt Thompson's realistic right to control Davis and the ends of his activities (to drive her to her dental appointment). The trial court did not misapply the law in concluding that a principal/agent relationship existed between Thompson and Davis and in imputing Davis's negligence to Thompson.

Point three is denied.

In point four, Young America contends that the trial court's judgment in favor of Marlon on his negligence claim is not supported by substantial evidence. Substantial evidence is evidence that, if believed, has some probative force on each fact that is necessary to sustain the trial court's judgment. *Ivie v. Smith*, 439 S.W.3d 189, 199 (Mo. banc 2014). "Evidence has probative force if it has any tendency to make a material fact more or less likely." *Id.* at 199-200. To prevail on a substantial-evidence challenge, the appellant must demonstrate that there is no evidence in the record tending to prove a fact necessary to sustain the trial court's judgment as a matter of law. *Id.* at 200.

In reviewing whether the trial court's judgment is supported by substantial evidence, an appellate court views the evidence in the light most favorable to the judgment and defers to the trial court's credibility determinations. *Id.* It accepts as true the evidence and inferences favorable to the judgment and disregards all contrary evidence. *Id.* The trial court is free to believe any, all, or none of the evidence presented at trial. *Id.* The trial court in this case made extensive findings of fact and conclusions of law. Additionally, Rule 73.01(c) provides that

13

"[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached."

Young America argues that there was insufficient evidence that Thompson had a realistic right to control Davis at the time of the accident. Specifically, Young America argues that at the time of the accident, Thompson was unwell because of her diabetic condition, that Davis had deviated from the original authorized trip to the dentist by driving to QuikTrip, and that the accident occurred as he was exiting QuikTrip in the opposite direction of the dentist's office.

Young America's arguments, however, ignore the standard of review—that the evidence is viewed in the light most favorable to the judgment. Such evidence showed that Thompson had the realistic right to control Davis. Thompson and Young America stipulated that on the day of the accident, Thompson went to the home of Davis and asked him to drive her to her dental appointment in her Passat and that she gave Davis the keys to the automobile and permission to drive it to take her to the appointment. Thompson testified at trial by deposition that at the time of the accident, she had known Davis for about a year and that he had been her driver in the past. She asked him to drive her to her dental appointment that day because she did not feel well due to her diabetic condition. While Thompson testified that her "blood sugar was going crazy," the evidence showed that she directed the final result of Davis's activity—driving her to her dental appointment.

Thompson and Young America further stipulated that on the way to the appointment, Davis drove to QuikTrip and that Thompson did not object to Davis stopping there. Thompson testified that "it was okay with [her] that they stopped at QuikTrip on the way to the dentist" because "that's just something people do when they're on the road." Thompson and Young

14

America stipulated that Davis was driving the Passat and Thompson was a passenger as they were leaving QuikTrip. Surveillance video from QuikTrip showed that Davis initially began turning right to head southbound (in the opposite direction of the dentist's office) but then turned left toward the northbound lanes into the path of Marlon traveling in the southbound lanes. Marlon similarly testified that the Passat started turning southbound but then "it comes out wider and, at the last second, they decided they wanted to go left [northbound]. And it happened in the blink of an eye." Finally, Thompson and Young America stipulated that at the time of the accident, Davis was taking Thompson to her dental appointment at her request and that after the accident, Davis drove Thompson to her appointment. Substantial evidence supported the trial court's judgment imputing Davis's negligence to Thompson based on the existence of a principal/agent relationship between them.

Point four is denied.

Alternatively, Young America contends in point five that the trial court's judgment in favor of Marlon on his negligence claim was against the weight of the evidence. "Appellate courts act with caution in exercising the power to set aside a decree or judgment on the ground that it is against the weight of the evidence." *Ivie*, 439 S.W.3d at 205.

> A claim that a judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment. In other words, weight of the evidence denotes an appellate test of how much persuasive value evidence has, not just whether sufficient evidence exists that tends to prove a necessary fact.

*Id.* at 205-06 (internal quotes and citations omitted). A judgment is against the weight of the evidence only if the trial court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment. *Id.* at 206. When the evidence poses two reasonable but different conclusions, the appellate court must defer to the trial court's

15

assessment of that evidence. *Id.* When reviewing the record under this standard, the appellate court defers to the trial court's findings of fact when the factual issues are contested and when the facts as found by the trial court depend on credibility determinations. *Id.*

In asserting that the judgment is against the weight of the evidence, Young America's arguments are similar to those in point four. It argues that Thompson did not have the right to control Davis at the time of the accident because Thompson was not physically well during the trip, because Thompson and Davis did not discuss Davis's detour to QuikTrip and Thompson did not expressly authorize the detour which was not for her benefit (Thompson did not go into or get anything from QuikTrip), and because the accident occurred as Davis was exiting QuikTrip before he was back en route towards the dentist's office. Having considered this evidence, this court is not firmly convinced that the trial court's finding of Thompson's right to control Davis was against the weight of the evidence.

Thompson asked Davis to drive her to her dental appointment on the day of the accident, and she gave him the keys to her car and permission to drive it for that purpose. Thompson did not object to Davis stopping at QuikTrip on the way to the appointment and testified that "it was okay" with her. Davis was driving Thompson to her dental appointment at her specific request and for her benefit at the time of the accident. While Davis initially began turning southbound in the opposite direction of the dentist's office, he then turned toward the northbound lanes into the path of Marlon. After the accident, Davis continued to drive Thompson to her appointment. Nothing in the record showed that Thompson's physical condition on the day of the accident prevented her from directing the final result of Davis's activities—driving Thompson to her dental appointment. Even considering the evidence cited by Young America, the trial court

16

could have reasonably found that Thompson had the realistic right to control the final result of Davis's activities. The trial court's judgment, therefore, was not against the weight of the evidence.

Point five is denied.

## Loss of Consortium

In point six, Young America contends that the trial court erred in entering judgment in favor of Michelle for loss of consortium. It bases its argument solely on its contention that Marlon had no valid claims against Thompson as argued in its points one through five. It does not separately challenge the evidentiary support for the judgment in favor of Michelle.

A "claim for loss of consortium is derivative only; for one spouse to recover for loss of consortium, the other spouse must have a valid claim for personal injury." *Thompson v. Brown & Williamson Tobacco Corp.*, 207 S.W.3d 76, 113 (Mo. App. W.D. 2006). As previously concluded, Marlon had a valid claim against Thompson based on her vicarious liability for the negligence of her agent, Davis. The trial court, therefore, did not err entering judgment for Michelle on her loss of consortium claims.

Point six is denied.

## CONCLUSION

Young America has standing to appeal the judgment against its insured, Thompson, under section 537.065. The judgment is affirmed.

/s/ *Thomas N. Chapman*
Thomas N. Chapman, Judge

All concur.

17