

*In the*

*Missouri Court of Appeals*

*Western District*

| | | |
|---|---|---|
| JAY WOLFE USED CARS OF BLUE SPRINGS, LLC D/B/A JAY WOLFE AUTO OUTLET, | ) ) ) | WD76644 |
| | ) | |
| Appellant, | ) | OPINION FILED: February 18, 2014 |
| | ) | |
| v. | ) | |
| | ) | |
| TYRELL C. JACKSON AND LIANE K. JACKSON, ON THEIR OWN BEHALF AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | ) ) ) ) | |
| | ) | |
| Respondents. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable John M. Torrence, Judge

Before Special Division: Cynthia L. Martin, Presiding Judge, Gary D. Witt, Judge and
Zel M. Fischer, Special Judge

Jay Wolfe Used Cars of Blue Springs, LLC d/b/a Jay Wolfe Auto Outlet ("Jay

Wolfe, LLC") appeals from the trial court's denial of its motion to stay proceedings and

compel arbitration.[1]  Jay Wolfe, LLC argues that the trial court erred in denying its

motion because (1) the trial court incorrectly determined that it failed to assign and

---

[1]Section 435.440.1(1) provides "[a]n appeal may be taken from [a]n order denying an application to compel arbitration."  All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

deliver title to a vehicle pursuant to section 301.210; (2) there was a valid arbitration contract; and (3) the Federal Arbitration Act and the Missouri Uniform Arbitration Act obligated the trial court to dismiss the class action counterclaims, compel arbitration, and stay all proceedings before it. Because we find that Jay Wolfe, LLC was not a party to a valid arbitration agreement, we affirm.

## Factual and Procedural Background

On January 18, 2010, Tyrell Jackson and Liane Jackson (collectively "the Jacksons") purchased a used 2003 Ford Explorer ("the vehicle"). In connection with their purchase, the Jacksons signed two documents: (1) a Cash Sale Agreement; and (2) a Retail Installment Agreement.

The Cash Sale Agreement identifies the Jacksons as the buyers of the vehicle and Jay Wolfe Used Cars of Blue Springs ("Jay Wolfe (no LLC)") as the dealer selling the vehicle. Jay Wolfe (no LLC) is a fictitious name registered to Saturn of Kansas City, Inc., a Missouri corporation. The Cash Sale Agreement provides, in relevant part:

> If Buyer is buying the Vehicle for cash (this includes a Buyer arranging Buyer's own financing from a party other than dealer), this Agreement is not binding upon either Dealer or Buyer until signed by an authorized Dealer representative.

> If Buyer is buying the Vehicle in a credit sale transaction with Dealer evidenced by a signed retail installment sale contract, this Agreement is binding when the retail installment contract is signed.

The Cash Sale Agreement includes an arbitration clause that allows either the Jacksons or Jay Wolfe (no LLC) to choose to have any dispute between them decided by arbitration. The Cash Sale Agreement also provides that if a dispute between the Jacksons and Jay

2

Wolfe (no LLC) is arbitrated, the Jacksons give up their right to participate in a class action suit against Jay Wolfe (no LLC).

The Retail Installment Agreement identifies the Jacksons as the buyers of the vehicle and Jay Wolfe Auto Outlet as the seller of the vehicle. Jay Wolfe Auto Outlet is a fictitious name registered to Jay Wolfe, LLC, a Delaware entity registered to do business in Missouri. The Retail Installment Agreement provides that the Jacksons purchased the vehicle from Jay Wolfe Auto Outlet, sets forth the purchase price for the vehicle, and outlines the terms of the loan used to purchase the vehicle. The Retail Installment Agreement does not include an arbitration clause. The Retail Installment Agreement does not reference or incorporate the Cash Sale Agreement.

The Jacksons defaulted on the loan. Jay Wolfe, LLC repossessed the vehicle and sent a notice to the Jacksons that advised the vehicle would be sold at a private sale. The notice informed the Jacksons:

> The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you will still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

The notice also informed the Jacksons that they could request a written explanation of the amount they owed but that they would be charged $25 for the explanation.

Following the sale of the vehicle, Jay Wolfe, LLC filed a petition to recover the deficiency balance owed by the Jacksons, plus interest.[2] The petition alleged that the Jacksons owed Jay Wolfe, LLC $2,142.05, plus interest at the contract rate of 23.95 percent. The petition attached, and thus sought to enforce, the Retail Installment Agreement. In response to Jay Wolfe, LLC's petition, the Jacksons filed a joint answer and two counterclaims. In the first counterclaim, the Jacksons alleged that Jay Wolfe, LLC violated the Uniform Commercial Code in sending a notice that informed the Jacksons that they would be charged $25 for a written explanation of the amount they owed and in including attorney fees and legal expenses that were not reasonably incurred in the deficiency balance. In the second counterclaim, the Jacksons alleged that Jay Wolfe, LLC violated the Motor Vehicle Time Sales Act in charging the Jacksons attorney fees and legal expenses that were unreasonably incurred and that exceeded 15 percent of the amount due and payable under the contract. In addition to their own claims, the Jacksons purported to assert claims on behalf of a putative class of persons who received similar notices from Jay Wolfe, LLC and who were assessed similar attorney fees and legal expenses.

In response to the joint answer and counterclaims, Jay Wolfe, LLC filed a Motion to Stay Proceedings and Compel Arbitration ("Motion"). The Motion asserted that the arbitration clause in the Cash Sale Agreement encompassed all claims alleged in the

_____

[2]Future Finance Corporation was the initial plaintiff in this case. The legal file reflects that following the Jacksons' purchase of the vehicle, Jay Wolfe, LLC assigned its rights under the Retail Installment Agreement to Future Finance Corporation, LLC, and that said entity later merged with Jay Wolfe, LLC. In connection with this litigation, Future Finance Corporation moved to substitute Jay Wolfe, LLC as the plaintiff. This motion was unopposed and was granted by the trial court. Thus, we refer to Jay Wolfe, LLC as the plaintiff in this Opinion.

4

petition and in the counterclaims so that the trial court was under an obligation to stay proceedings and compel arbitration.

After extensive briefing by Jay Wolfe, LLC and the Jacksons, the trial court denied the Motion. The trial court made the following findings:

1. [Jay Wolfe (no LLC)] and Jay Wolfe Auto Outlet, at all times relevant in these proceedings, were and are separate and distinct legal entities.

2. [Jay Wolfe (no LLC)] is registered with the Missouri Secretary of State as a fictitious name for Saturn of Kansas City, Inc.

3. Jay Wolfe Auto Outlet is registered with the Missouri Secretary of State as a fictitious name for [Jay Wolfe, LLC].

4. [The Jacksons] entered into an Agreement with [Jay Wolfe (no LLC)] on January 18, 2010, for the purchase and sale of [the vehicle] on a cash basis for a "Total Cash Sale Price" of $11,450.00, plus an "Administrative Fee" of $199.00, less a "Cash Down Payment" of $800.00, for a "Total Amount Due" of $10,849.00 (the "Cash Sale Agreement").

6. [sic] The Cash Sale Agreement contained an arbitration clause providing that either party to the Agreement could choose to have any dispute decided by arbitration and further providing that the Jacksons gave up their right to participate as a class representative or class member of any class claim.

7. At the time the Cash Sale Agreement was executed, [Jay Wolfe (no LLC)] was not licensed by the Missouri Department of Revenue to sell motor vehicles.

8. [Jay Wolfe (no LLC)] did not hold the title to [the vehicle] and did not assign or transfer title to the Jacksons.

9. The Jacksons also on January 18, 2010, entered into a Retail Installment Agreement with [Jay Wolfe, LLC] for the purchase and sale of [the vehicle] on credit, for 182 weekly payments of $88.17 for a "Total of Payments" of $16,046.94, including a "Finance Charge" of $5,197.94, based on an "Annual Percentage Rate" of 23.95%, which Retail Installment Agreement contained a Promissory Note payable to Future Finance Company LLC in the principal amount of $10,849.00, plus interest at the rate of 23.95 percent per annum.

5

10. The Retail Installment Agreement does not contain an arbitration clause.

11. The Retail Installment Agreement contains a merger clause that provides, in pertinent part, that the Retail Installment Agreement is the "complete and exclusive statement of the agreement between" the parties thereto.

12. [Jay Wolfe, LLC] held the title to [the vehicle] and assigned and transferred the title to the Jacksons on January 18, 2010.

13. The Petition filed against the Jacksons . . . was filed by [Jay Wolfe, LLC], but named Future Finance Corporation as the plaintiff against the Jacksons as defendants and the only contract attached to the Petition was the Retail Installment Agreement.

After making those findings of fact, the trial court concluded that the arbitration agreement in the Cash Sale Agreement "was null and void under [section] 301.210 RSMo due to the failure of [Jay Wolfe (no LLC)] to assign and deliver [the vehicle's] title to the Jacksons."

Jay Wolfe, LLC appeals.

**Standard of Review**

We review a trial court's denial of a motion to stay proceedings and to compel arbitration *de novo*. *Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 435 (Mo. App. W.D. 2010). Our analysis of a motion to stay proceedings and to compel arbitration requires the consideration of three factors. "First, we must 'determine whether a valid arbitration agreement exists.'" *Id.* at 434 (quoting *Nitro Distrib., Inc. v. Dunn*, 194 S.W.3d 339, 345 (Mo. banc 2006)). "Second, if a valid arbitration agreement exists, we must determine 'whether the specific dispute falls within the scope of the arbitration agreement.'" *Id.* (quoting *Nitro Distrib.*, 194 S.W.3d at 345). Finally, "if a valid

arbitration contract exists, and if the subject dispute is within the scope of the arbitration provision, then we must determine whether the arbitration agreement is subject to revocation under applicable contract principles." *Id.* at 434-35. In considering these three factors, we "'apply the usual rules of state contract law and canons of contract interpretation.'" *Id.* at 435 (quoting *Nitro Distrib.*, 194 S.W.3d at 345).

## Analysis

Jay Wolfe, LLC sets forth three points relied on, each of which claims that the trial court erred in denying the Motion. In its first point relied on, Jay Wolfe, LLC argues that the trial court erred in concluding that the Cash Sale Agreement, which contains the agreement to arbitrate and the Jacksons' waiver of all putative class action claims, is void under section 301.210 because the Cash Sale Agreement fails to assign and deliver title to the vehicle. Second, Jay Wolfe, LLC claims that the trial court erred in determining that the Cash Sale Agreement is between the Jacksons and Jay Wolfe (no LLC) so that there is no agreement to arbitrate between the Jacksons and Jay Wolfe, LLC. In its final point relied on, Jay Wolfe, LLC contends that the trial court erred in failing to enforce the agreement to arbitrate. The second point relied on is dispositive of this appeal.

Without a valid agreement to arbitrate, a party cannot be compelled to arbitrate a dispute. *Frye*, 321 S.W.3d at 436. Thus, our analysis must begin with a determination of whether there is a valid agreement to arbitrate between the Jacksons and Jay Wolfe, LLC. *Id.* at 434. In determining the validity of an arbitration contract, we look to Missouri substantive law. *Id.* at 436. "The elements required to form a valid contract in Missouri are 'offer, acceptance, and bargained for consideration.'" *Id.* (quoting *Johnson v.*

7

*McDonnell Douglas Corp.*, 745 S.W.2d 661, 662 (Mo. banc 1988)).  Underlying those elements is the requirement of "mutuality of agreement," which requires that both parties assented to the terms of the contract.  *See Arrowhead Contracting, Inc. v. M.H. Washington, LLC*, 243 S.W.3d 532, 535 (Mo. App. W.D. 2008) (citing *L.B. v. State Comm. of Psychologists*, 912 S.W.2d 611, 617 (Mo. App. W.D. 1995)).

The Jacksons signed two documents in connection with their purchase of the vehicle: (1) the Cash Sale Agreement; and (2) the Retail Installment Agreement.  The Cash Sale Agreement contains the arbitration clause at issue.  By its very terms, the Cash Sale Agreement indicates that "Dealer" was the seller of the vehicle and defines "Dealer" as "the authorized Dealer named on the face of this agreement and who becomes a party to this Agreement by accepting it."  The "Dealer" named on the face of the Cash Sale Agreement is "Jay Wolfe Used Cars of Blue Springs" (referred to throughout this Opinion as Jay Wolfe (no LLC)) which, as explained *supra*, is a fictitious name registered to Saturn of Kansas City, Inc., a Missouri corporation.  Thus, the Cash Sale Agreement -- and the arbitration clause included therein -- is between the Jacksons and Jay Wolfe (no LLC).  Jay Wolfe, LLC is not a named party to the Cash Sale Agreement.

Instead, Jay Wolfe, LLC is a named party to the Retail Installment Contract, which does not contain an arbitration provision.  Jay Wolfe, LLC argues that even though Jay Wolfe, LLC was not a named party to the Cash Sale Agreement, the dispute between Jay Wolfe, LLC and the Jacksons was subject to the arbitration clause found in the Cash Sale Agreement.  Jay Wolfe, LLC contends that we must read the Cash Sale Agreement and the Retail Installment Agreement as one contract.

8

Jay Wolfe, LLC's argument overlooks an important finding of fact that neither party to this appeal disputes: Jay Wolfe, LLC and Jay Wolfe (no LLC) are separate legal entities. Jay Wolfe, LLC is a Delaware entity registered to do business in Missouri whereas Jay Wolfe (no LLC) is a fictitious name registered to Saturn of Kansas City, Inc., a Missouri corporation. It would be inappropriate for us to read the Cash Sale Agreement and Retail Installment Agreement as one contract because doing so would result in imputing the contractual rights and obligations of one entity to the other, which Missouri law generally disallows. *See Landstar Inves. II, Inc. v. Spears*, 257 S.W.3d 630, 632 (Mo. App. S.D. 2008) (remarking that "a contract generally binds no one but the parties thereto, and it cannot impose any contractual obligation or liability on one not a party to it" (internal quotation marks omitted)); *see also Netco, Inc. v. Dunn*, 194 S.W.3d 353, 358-59 (Mo. banc 2006) (declining to hold a non-signatory to an agreement subject to that agreement's arbitration clause).

Perhaps recognizing that the Cash Sale Agreement and the Retail Installment Contract cannot plainly be read as a single contract, Jay Wolfe, LLC argues that the Cash Sale Agreement, despite its terms to the contrary, should be read as an agreement between Jay Wolfe, LLC and the Jacksons. Jay Wolfe, LLC offers three arguments to support this position: (1) Jay Wolfe, LLC was the sole operator of the dealership at which the Jacksons purchased the vehicle; (2) the Cash Sale Agreement's designation of Jay Wolfe (no LLC) as the dealer was simply a scrivener's error; and (3) the Jacksons received legal title from Jay Wolfe, LLC, not from Jay Wolfe (no LLC). Jay Wolfe,

9

LLC's arguments fail to persuade us to that Jay Wolfe, LLC was a party to the Cash Sale Agreement.

The first two arguments -- that Jay Wolfe, LLC was the sole operator of the dealership and that the Cash Sale Agreement's designation of Jay Wolfe (no LLC) as the dealer was a scrivener's error -- require us to ignore the plain language of the Cash Sale Agreement in lieu of external factors not apparent on the face of the agreement. Jay Wolfe, LLC cites no authority to support its contention that we may ignore the plain language of a contract based on unapparent external factors. The "[f]ailure to cite relevant authority supporting a point or to explain the failure to do so preserves nothing for review." *Goudeaux v. Bd. of Police Comm'rs of Kansas City*, 409 S.W.3d 508, 516 (Mo. App. W.D. 2013) (internal quotation marks omitted). Thus, Jay Wolfe, LLC's first two arguments are unpreserved for our review.

Even if we overlooked Jay Wolfe, LLC's lack of citation to authority, the remedy that Jay Wolfe, LLC is effectively seeking is unavailable in this case. Because the Cash Sale Agreement plainly identifies Jay Wolfe (no LLC) as the Dealer, we would be required to reform the Cash Sale Agreement to reflect that Jay Wolfe, LLC was the Dealer of the vehicle. Jay Wolfe, LLC has not formally sought reformation of the Cash Sale Agreement, and we are not inclined to grant a remedy *sua sponte*. Further, Missouri substantive law, which governs disputes concerning arbitration agreements, would not permit reformation in this case.

> Reformation of a written instrument is an extraordinary equitable remedy and should be granted with great caution and only in clear cases of fraud or mistake. Reformation is a remedy by which a party to a contract may

10

obtain modification of the terms of the contract such that those terms reflect the parties' original intent in forming the contract. Equity will reform an instrument which, ***through mutual mistake of the parties***, does not accurately set forth the terms of the agreement actually made or which does not incorporate the true prior intentions of the parties.

*Thompson v. Koenen*, 396 S.W.3d 429, 434 (Mo. App. W.D. 2013) (emphasis added) (internal quotation marks omitted). Nothing in the record indicates that the identification of Jay Wolfe (no LLC) as the Dealer of the vehicle was a mutual mistake.[3] Thus, even if Jay Wolfe, LLC had formally sought the relief of reformation of the Cash Sale Agreement in its petition, we would not conclude that the trial court erred in failing to reform the Cash Sale Agreement as to permit enforcement of its arbitration clause.

In its final argument suggesting that Jay Wolfe, LLC must be deemed the Dealer under the Cash Sale Agreement, Jay Wolfe, LLC points out that the Jacksons received legal title from Jay Wolfe, LLC, and not from Jay Wolfe, (no LLC). According to Jay Wolfe, LLC, "[t]he transaction would not -- ***and could not*** -- have been completed without contemporaneous execution of the Cash Sale Agreement and the Retail Installment Agreement, both of which were with [Jay Wolfe, LLC]." (Emphasis added.) We agree with Jay Wolfe, LLC in part. The Jacksons did receive legal title for the vehicle from Jay Wolfe, LLC. We do not agree, however, that the transaction permitting

---

[3]On the contrary, the record suggests that the Cash Sale Agreement's identification of Jay Wolfe (no LLC) as the Dealer was a unilateral mistake attributable to Jay Wolfe, LLC. The President of Wolfe Automotive Group, who also has experience as a corporate lawyer, testified in a deposition that the identification of Jay Wolfe (no LLC) as the Dealer of the vehicle was an administrative error that has since been remedied by new forms. In *Alea London, Ltd. v. Bono-Soltysiak Enterps.*, 186 S.W.3d 403 (Mo. App. E.D. 2006), the Court suggested that reformation of a contract may be permitted under Missouri law based on a *unilateral* mistake, *id.* at 416; even if that were true (an issue we need not decide), *Alea* states that granting reformation for unilateral mistake would require "clear and convincing evidence of some sort of fraud, deception or other bad faith activities by the other party that prevented or hindered the mistaken party in the timely discovery of the mistake." *Id.* There is no evidence, much less clear and convincing evidence, of any bad faith by the Jacksons.

11

the transfer of title could not have been completed without contemporaneous execution of the Cash Sale Agreement. The Retail Installment Agreement, to which Jay Wolfe, LLC and the Jacksons were parties, contains all of the material terms necessary to the transaction. The Retail Installment Agreement indentifies the Jacksons as the buyers of, and Jay Wolfe, LLC as the seller of, the vehicle. The Retail Installment Agreement sets forth the purchase price of the vehicle, and identifies all of the terms for payment of that purchase price. The Retail Installment Agreement identifies the conditions and consequences of default should the purchase price not be timely paid. The Cash Sale Agreement was not essential to the purchase transaction. This fact is best evidenced by Jay Wolfe, LLC's petition, where Jay Wolfe, LLC claimed a breach of, and sought to enforce, the Retail Installment Agreement without reference to the Cash Sale Agreement.

We conclude that there is no valid arbitration agreement between the Jacksons and Jay Wolfe, LLC. The contract that memorialized the sale of the vehicle from Jay Wolfe, LLC and the Jacksons was the Retail Installment Agreement, which does not include an arbitration clause. The Cash Sale Agreement, which does contain an arbitration clause, was between the Jacksons and Jay Wolfe (no LLC). Jay Wolfe (no LLC) is a non-party to the claim and counterclaims before us, rendering the Cash Sale Agreement irrelevant to the disposition of this appeal. Accordingly, we conclude that the trial court did not err in denying the Motion. Jay Wolfe LLC's second point relied on is denied.

Jay Wolfe, LLC's first point relied on argues that the trial court erred in concluding that the Cash Sale Agreement was null and void because it failed to comply with section 301.210. Indeed, the trial court did so conclude. However, "[o]ur primary

12

focus is on whether the trial court's result is correct, not the route taken to reach it." *Frye*, 321 S.W.3d at 435. We need not review whether the trial court properly found cause to deny the Motion because of Jay Wolfe, LLC's failure to comply with section 301.210 when the trial court alternatively and properly found that no contract to arbitrate existed between the Jacksons and Jay Wolfe, LLC. Jay Wolfe, LLC's third point relied on argues that the trial court erred in failing to enforce the arbitration agreement. The third point relied on presupposes the existence of a valid arbitration agreement, a premise we have rejected.[4]

Points One and Three are denied.

## Conclusion

The trial court's order denying the Motion is affirmed.

Cynthia L. Martin

Cynthia L. Martin, Judge

All concur

---

[4]If a valid arbitration agreement between Jay Wolfe, LLC and the Jacksons had been determined to exist, we would have been required to address whether Jay Wolfe, LLC irreparably waived its right to compel arbitration and stay proceedings by its election to initiate litigation against the Jacksons in the circuit court. Because there was no valid arbitration agreement between Jay Wolfe, LLC and the Jacksons, we need not address the subject of waiver.