

# In the
# Missouri Court of Appeals
## Western District

JULIE SHIPLET,                          )
                                        )
    Appellant-Respondent,               )   **WD76740 Consolidated with**
                                        )   **WD76758**
v.                                      )
                                        )   **OPINION FILED:**
LARRY L. COPELAND AND JUDITH            )   **September 30, 2014**
A. COPELAND, D/B/A C & C CAR            )
SALES,                                  )
                                        )
    Respondent-Appellant,               )
                                        )
BOB LEES, D/B/A AUTO BODY               )
PLUS,                                   )
                                        )
    Respondent.                         )

**Appeal from the Circuit Court of Cass County, Missouri**
The Honorable J. Michael Rumley, Judge

Before Division Four:  Alok Ahuja, Chief Judge, Presiding, Cynthia L. Martin, Judge and
David H. Miller, Special Judge

Billy Shiplet ("Billy") sued Larry Copeland ("Larry") and Judith Copeland

("Judith")[1] (collectively the "Copelands"), d/b/a C&C Car Sales, and Bob Lees ("Lees"),

d/b/a Auto Body Plus, alleging violations of the Missouri Merchandizing Practices Act

---

[1]Because Billy Shiplet and Julie Shiplet share the same surname, we refer to each by their first name for purposes of clarity.  The same is true for Larry Copeland and Judith Copeland.  No familiarity or disrespect is intended with respect to any of the parties.

("MMPA")[2] in connection with the sale of two vehicles. After suit was filed, Billy died, and his personal representative, Julie Shiplet ("Julie"), was substituted as plaintiff. Following a bench trial, the trial court entered judgment in favor of Julie and against the Copelands and Lees, jointly and severally, in the amount of $9,000 in connection with the sale of one of the vehicles. The trial court entered judgment in favor of Julie and against Lees in the amount of $5,705.73 in connection with the sale of the second vehicle. The trial court did not award Julie attorney's fees. Julie appeals, alleging error in the failure to award attorney's fees and in the calculation of the $9,000 damage award. The Copelands cross-appeal, alleging they were not legally liable for Lees's sale of a vehicle to Billy. We affirm.

## Factual and Procedural Background[3]

The Copelands are the owners of C&C Car Sales, a used car dealership licensed in the state of Missouri.[4] C&C Car Sales originally operated from a location located at 100 South Madison in Raymore, but on the 2001 motor vehicle dealer license application, the Copelands indicated that the physical location of C&C Car Sales had moved to 202 Evans in Raymore. That address is also home to Lees's automobile body repair business, Auto Body Plus.

Before completing the 2001 license application for a motor vehicle dealer, Larry approached Lees with a business proposition regarding the physical location of C&C Car Sales. Larry and Lees never reduced their agreement to writing, but the testimony at trial

[2]Chapter 407. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.
[3]We view the evidence in the light most favorable to the judgment. *US Bank Nat'l Ass'n v. Cox*, 341 S.W.3d 846, 848 n.2 (Mo. App. W.D. 2011).
[4]Missouri's motor vehicle dealer licensing requirements are found in sections 301.550 to 301.573.

established that the two men struck a deal in which C&C Car Sales would be physically located at Auto Body Plus for the purpose of motor vehicle dealer licensing, and in exchange, Larry would allow Lees to use dealer tags allotted to C&C Car Sales. Larry and Lees took several actions that demonstrated their agreement, including (1) installing a "C&C Car Sales" sign in front of the Auto Body Plus building; (2) printing business cards that listed Lees as an owner of C&C Car Sales; (3) using sales made by Lees to meet the requirements of C&C Car Sales for motor vehicle dealer licensing; (4) authorizing Lees to act as a representative of C&C Car Sales for the purpose of inspections by the Department of Revenue or law enforcement; and (5) naming Lees as an owner of C&C Car Sales on the applications for a motor vehicle dealer license.

In 2008, while Larry and Lees's business arrangement regarding C&C Car Sales remained in place, Billy attempted to purchase two vehicles located at 202 Evans in Raymore. The first vehicle Billy purchased was a 1993 Pontiac owned by Lees's son. The Pontiac was in a wrecked condition and required automobile body repair. Billy gave Lees's son cash and personal property valued at $5,705.73 in exchange for the Pontiac. Testimony at trial was conflicting as to whether the purchase price included the parts and labor required for the Pontiac's repair. Nonetheless, Lees never completed the repairs on the Pontiac, and Billy never took possession of the Pontiac.

The second vehicle Billy purchased was a 2002 Volkswagen also owned by Lees's son. Billy agreed to purchase the Volkswagen for $12,000. Billy gave Lees a cashier's check in the amount of $10,500 made payable to C&C Car Sales and promised to pay the remaining $1,500 at a later unspecified date. Billy took possession of the Volkswagen,

3

and Lees provided Billy with a temporary permit to use until he could license the vehicle. Billy did not, however, receive the title to the Volkswagen at the time of purchase. When Billy attempted to license the Volkswagen, the Department of Revenue rejected his application because he did not have the title. Billy talked to Lees about receiving the title to the Volkswagen. Lees did not deliver the title, but offered Billy a C&C Car Sales's dealer tag to use on the Volkswagen. Billy accepted the dealer tag and continued driving the Volkswagen.

The Volkswagen started having mechanical issues following Billy's purchase of it. Lees repaired the Volkswagen once. Approximately four months after Billy's purchase, the Volkswagen again had mechanical problems. Billy returned the Volkswagen to Lees. Billy demanded return of the $10,500 he paid for the vehicle, as he had never paid the $1,500 balance of the purchase price. While the vehicle was in Billy's possession, it was driven approximately 3,500 to 4,000 miles.

Billy filed suit alleging, *inter alia*, that the Copelands d/b/a C&C Car Sales and Lees d/b/a Auto Body Plus violated the MMPA in connection with the sale of the Pontiac and the sale of the Volkswagen. The petition asserted that, with respect to the sale of each vehicle, the "Defendants made certain false or misleading representations and led [Billy] to believe certain falsehoods about the vehicle, specifically [that the] Defendants would pass clear title to [Billy] [and] [t]he condition of the vehicle." The petition also asserted two counts alleging negligence per se and two counts alleging common law fraud.

4

The case was tried to the court on April 15, 2013.[5] At the conclusion of the evidence, the trial court asked if there was "[a]ny other evidence from Plaintiff." Julie's counsel responded that there was not, and the trial court advised that "[t]he evidence is closed in this matter." The trial court advised the parties following closing arguments that it was taking the matter under advisement and that it would make its decision "pretty quick."

On April 24, 2013, the trial court noted its decision by docket entry. With respect to the sale of the Pontiac, the docket sheet notation reflects the entry of judgment in favor of Julie[6] and against Lees in the amount of $5,705.73 on one of Julie's MMPA claims. With respect to the sale of the Volkswagen, the docket sheet notation reflects the entry of judgment in favor of Julie and against the Copelands and Lees, jointly and severally, in the amount of $9,000 on the second MMPA claim. The remaining counts of the petition were shown as dismissed. Julie's attorney was directed to prepare a formal written judgment to provide to the trial court.

On April 30, 2013, before a formal written judgment was entered, Julie filed a motion for attorney's fees and a motion to clarify the judgment. Both motions were opposed by the Copelands.

Julie's motion for attorney's fees sought an award of reasonable attorney's fees as permitted under the MMPA for the "prevailing party," and attached a statement of fees.[7] By docket entry dated May 9, 2013, the trial court denied the motion for attorney's fees.

---

[5]Billy was deposed prior to his death. His deposition was received as evidence in lieu of testimony at trial.

[6]As noted *supra*, Julie was substituted for Billy as plaintiff following Billy's death.

[7]Julie included this motion in the supplemental legal file she filed as a part of the record on appeal, but the motion does not include the statement of fees therein referenced as an exhibit.

The trial court explained in its docket entry that it was "well aware that the court has authority and discretion to award attorney fees under the Missouri Merchandising Practice Act and that at the trial in this case there was no evidence presented regarding attorney fees. It is the judgment of the court that no attorney fees be awarded to any party in this case."

Julie's motion to clarify the judgment argued that the "uncontroverted evidence submitted a [sic] trial was that [Billy] had paid the sum of $10,500 for the purchase of the Volkswagen" and that "[t]here was further evidence that there was a remaining sum due of $1,500 which was to be paid at a later date." Julie's motion argued that the trial court mistakenly "deducted the $1,500 which was due at a later date from the amount actually paid for the vehicle in determining a $9,000 damage amount." The trial court denied the motion to clarify.

On May 14, 2013, the trial court entered a written judgment that comported with its April 24, 2013 docket entry ("Judgment").[8] The Judgment did not address the trial court's earlier ruling on the subject of attorney's fees.

On June 12, 2013, the Copelands timely filed a motion for a new trial,[9] arguing that the Judgment was against the weight of the evidence and erroneously applied the law with respect to the conclusion that the Copelands and Lees were jointly and severally liable to Julie for the sale of the Volkswagen. On August 1, 2013, more than thirty days

---

[8]Although a docket entry may, under certain circumstances, suffice to constitute the entry of judgment, that is not the case where a trial court expresses its intent to defer the effective date of a docket entry by, for example, directing a formal judgment is to be prepared by the prevailing party. *See, e.g.*, *In re Marriage of McCoy*, 818 S.W.2d 322, 323-24 (Mo. App. S.D. 1991); *Grantham v. Shelter Mut. Ins. Co.*, 721 S.W.2d 242, 245 (Mo. App. W.D. 1986). Here, the trial court's April, 24, 2013 docket entry directed Julie to prepare a formal judgment.

[9]Although a motion for new trial is not required in a bench tried case, such a motion is permitted pursuant to Rule 73.01(d).

after the entry of Judgment, Julie filed a renewed motion for attorney's fees, claiming error in the trial court's failure to award attorney's fees as permitted by the MMPA.

The trial court denied the Copeland's motion for new trial on August 5, 2013. The docket sheet reflects no action taken by the trial court on Julie's renewed motion for attorney's fees.

Julie and the Copelands each filed a notice of appeal on August 12, 2013. Julie appeals the trial court's failure to award her attorney's fees and the trial court's calculation of damages regarding the sale of the Volkswagen. The Copelands appeal the trial court's determination that they were jointly and severally liable to Julie in connection with the sale of the Volkswagen. Though named as a respondent along with the Copelands in Julie's appeal, Lees has not filed a brief.

## Analysis

### *Julie's Claims on Appeal*

In her first point on appeal, Julie argues that the trial court erred in denying her request for attorney's fees "because the issue of attorney's fees under the [MMPA] is not ripe until after judgment in that attorney's fees are not recoverable until there is a prevailing party and until a judgment exists there is not a prevailing party." Julie thus argues that the trial court "abused his discretion in denying attorney's fees . . . based on a misstatement and misapplication of the law" by requiring Julie to put on evidence of her fees before the court determined that she was the prevailing party. [Appellant's Brief, p. 10]. We review a trial court's denial of a request for attorney's fees for an abuse of discretion. *Berry v. Volkswagen Grp. of Am., Inc*, 397 S.W.3d 425, 430 (Mo. banc 2013).

7

"'To demonstrate an abuse of discretion, the complaining party must show the trial court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice.'" *Id.* at 431 (quoting *W. Blue Print Co. v. Roberts*, 367 S.W.3d 7, 23 (Mo. banc 2012)).

Julie's point on appeal is premised on the belief that the only reason her request for attorney's fees was denied was because she failed to offer evidence of her attorney's fees during trial. Though the trial court's docket entry denying the request for attorney's fees does observe that Julie presented no evidence of attorney's fees at trial, the trial court did not, as Julie contends, operate under the misapprehension that it therefore had no power to award attorney's fees. To the contrary, the trial court expressly noted that it was well aware that it possessed the authority and the discretion to award fees. The trial court concluded, however that "[i]t is the judgment of the court that no attorney fees be awarded to *any* party in this case." (Emphasis added.) We do not agree, therefore, with Julie's assertion that the trial court failed to award attorney's fees because it operated under a legal misapprehension that attorney's fees could not be awarded unless evidence of fees was introduced at trial.[10] Rather, the trial court's denial of an award of attorney's fees was expressly stated in terms of the trial court's exercise of discretion.

In fact, Section 407.025.1 plainly provides that "[t]he court *may*, in its discretion, award . . . to the prevailing party attorney's fees, based on the amount of time reasonably

---

[10]We thus express no opinion as to whether it would have been an abuse of discretion to deny Julie's request for attorney's fees solely on the basis that no evidence of same was offered during trial. We do note that the MMPA requires the court (and not the jury) to award fees. However, in a bench tried MMPA case, best practices would seem to dictate that any party desiring an award of attorney's fees should either put on evidence of those fees during trial, or rest subject to the evidence remaining open for the limited purpose of admitting evidence of attorney's fees.

expended." (Emphasis added.) Julie's point on appeal does not assert that the trial court erred in exercising its discretion under this statute.[11] Even had this claim of error been preserved for our review, we would not find an abuse of discretion. As to the Copelands, Julie prevailed on only one of her two MMPA claims, and did not recover the full extent of the damages she sought on the claim where she prevailed. In short, the Copelands prevailed on one claim, and Julie prevailed in part on the other. The trial court did not abuse its discretion, therefore, in electing not to award attorney's fees to *any* party in connection with the claims against the Copelands.

As to Lees, though Julie prevailed on both MMPA claims she asserted, the transcript suggests some level of complicity in the relationship between Billy and Lees, raising equitable concerns that may well have influenced the trial court's exercise of its discretion in electing not to award attorney's fees. Moreover, though a statement of fees was attached to Julie's motion for attorney's fees, that statement is not a part of the record on appeal, leaving us no way to discern whether the amount of the claim was "reasonable."[12]

---

[11]The argument portion of Julie's Brief does argue that it was an abuse of discretion to deny Julie an award of attorney's fees, notwithstanding the discretion afforded the trial court by section 407.025.1. However, claims of error raised in the argument portion of a brief that are not raised in the point relied on are not preserved for our review. *See Coleman v. Mo. Sec'y of State*, 313 S.W.3d 148, 152-53 (Mo. App. W.D. 2010) (concluding that arguments not encompassed within the point relied on are not preserved for appellate review); Rule 84.04(e).

[12]Julie represents in her Brief that the motion for attorney's fees filed prior to the entry of Judgment sought a hearing to present evidence on the subject. The motion did not request a hearing, but simply requested an attorney's fee award in the amount reflected on an attached "statement of fees."

9

These collective circumstances suggest that the trial court did not abuse its discretion in declining to award Julie attorney's fees even presuming, *arguendo*, that Julie preserved this claim of error for our review.[13] Julie's first point on appeal is denied.

Julie's second point on appeal argues that the trial court erred in its assessment of damages. In particular, Julie contends that in assessing damages at $9,000 for the sale of the Volkswagen, the trial court "created credits against the plaintiff's damages which were not supported by evidence nor requested by defendants." According to Julie, the uncontroverted evidence presented at trial established that Billy paid $10,500 for the purchase of the Volkswagen and promised to remit an additional $1,500 at an uncertain date in the future. Julie asserts that neither the Copelands nor Lees ever asserted the affirmative defense of credit or offset for the value of Billy's use of the Volkswagen. Thus, according to Julie, the trial court erred in awarding damages for Billy's purchase of the Volkswagen in an amount less than the $10,500 he paid.

The trial court explained its Judgment in denying Julie's motion to clarify as follows:

> [T]he courts [sic] original judgment on Count I of the petition [regarding the sale of the Volkswagen] is in favor of Plaintiff and against Defendants jointly and severally in the amount of $9,000.00. Although no party requested findings of fact and considers [sic] of law the court notes that there was a question of fact as to whether the $1500.00 was ever paid and further evidence that Plaintiffs [sic] had use of the vehicle for approximately 4 months and drove the vehicle several thousand [sic] of miles for which the Defendants revive [sic] some credit.

---

[13]Julie filed a renewed motion for attorney's fees on August 1, 2013, more than thirty days after the trial court's entry of Judgment. Julie's point on appeal makes no reference to, and claims no error associated with, this motion, which was never ruled on by the trial court.

10

We will affirm the trial court's award of damages unless it is not supported by the evidence, is against the weight of the evidence, or is based on an erroneous application of the law. *Williams v. Williams*, 99 S.W.3d 552, 557 (Mo. App. W.D. 2003). "We accord great weight to the trial court's findings on actual damages, which we will not disturb 'unless the damages awarded are clearly wrong, could not have been reasonably determined, or were excessive.'" *Riddell v. Bell*, 262 S.W.3d 301, 305 (Mo. App. W.D. 2008) (quoting *Williams*, 99 S.W.3d at 557).

Section 407.025.1 allows a plaintiff who has "suffer[ed] an ascertainable loss of money or property" as a result of a breach of the MMPA to recover "actual damages." "Although no Missouri cases outline the method the court should use in determining actual damages in an unlawful merchandising practices case, we take guidance from similar causes of action." *Sunset Pools of St. Louis, Inc. v. Schaefer*, 869 S.W.2d 883, 886 (Mo. App. E.D. 1994). "The purpose of the Merchandising Practices Act is to supplement the definitions of common law fraud in an attempt to preserve fundamental honest, fair play and right dealings in public transactions. Therefore, we . . . refer to the remedies for common law fraud." *Id.* (citation omitted).

Damages under the MMPA customarily are measured using the lost benefit of the bargain rule. *Walsh v. Al West Chrysler, Inc.*, 211 S.W.3d 673, 675 (Mo. App. S.D. 2007). However, "[t]he benefit of the bargain rule does not apply where the purchaser rescinds and returns the property received." *Heberer v. Shell Oil Co.*, 744 S.W.2d 441, 443 (Mo. banc 1988). "In such a case, [the purchaser] may properly recover the amount he paid with interest from the date of payment, plus incidental losses and expenses

11

suffered as a result of the seller's misrepresentations." *Id.* (citing *Salmon v. Brookshire*, 301 S.W.2d 48, 54 (Mo. App. 1957). However, a purchaser cannot continue to use property aware of its defect and later claim the benefit of rescission. *See, e.g.*, *Bryant v. Prenger*, 717 S.W.2d 242, 244-45 (Mo. App. W.D. 1986) (holding that continued use of vehicle after purported attempt to rescind purchase because of odometer dispute nullified right to rescind).

Here, Julie's petition sought actual damages with respect to Billy's purchase of the Volkswagen. There is no dispute that Billy knew during the entire time he possessed the Volkswagen that title had not been delivered to him. Instead of returning the Volkswagen when he first learned he could not license the vehicle because of the missing title, Billy accepted and used a C&C Car Sales dealer tag and continued to operate the vehicle, aware it had not been, and could not be, duly licensed. Yet, the inability or failure to deliver title served as a significant basis for the MMPA claim involving the Volkswagen. Thus, though Billy later returned the car and sought, in effect, to rescind the purchase by demanding return of the amount he had paid to that point, we see no error in calculating Julie's actual damages based not on the measure of damages for rescission, but instead based on the benefit of the bargain rule. The price paid for property is not the proper measure of damages under the benefit of the bargain rule. *Sunset Pools*, 869 S.W.2d at 886. Rather, in some fashion actual damages must approximate "the difference between the actual value of the property and what its value would have been if it had been as represented." *Id*. Where, as here, property has been returned to the seller without objection, but under circumstances where the purchaser willingly used the property for a

12

considerable period of time aware of, and notwithstanding, its defect, calculation of the benefit of the bargain by "crediting" the price paid for the property by a reasonable value for its use is not error.

We thus disagree with Julie's characterization of the trial court's explanation for its Judgment. The trial court did not improvidently consider an unpled affirmative defense of credit or offset. Rather, based on the evidence, which included Lees's son's testimony that Billy was in possession of the Volkswagen for approximately four months and that over those four months, the vehicle was driven for 3,500 to 4,000 miles, the trial court calculated an amount that approximated Julie's actual damages.

Julie's second point on appeal is denied.

### *The Copelands' Claim on Appeal*

The Copelands' single point on appeal argues that the trial court erred in concluding that the Copelands and Lees were jointly and severally liable with respect to the sale of the Volkswagen. The Copelands contend that there was insufficient evidence to establish that Lees was an agent of the Copelands so that they could be found vicariously liable for Lees's actions. The Copelands assert that the evidence presented at trial did not support a finding of agency because there was no evidence that Lees had either actual authority or apparent authority to act on the Copelands' behalf. Without the agency relationship, the Copelands argue, they cannot be found liable for the MMPA violation in connection with the sale of the Volkswagen so that the entry of judgment finding the Defendants jointly and severally liable constituted error.

13

"Whether an agency relationship exists is generally a factual question . . . ." *West v. Sharp Bonding Agency, Inc.*, 327 S.W.3d 7, 11 (Mo. App. W.D. 2010). Because this appeal arises from a bench trial, we will review the trial court's finding of an agency relationship between the Copelands and Lees and will affirm that finding unless it is not supported by the evidence, is against the weight of the evidence, or is based on an erroneous application of the law. *Williams*, 99 S.W.3d at 557.

"Agency is the fiduciary relationship resulting from the manifestation of consent by an agent to a principal that the agent will act on the principal's behalf and subject to his control." *Bach v. Winfield-Foley Fire Prot. Dist.*, 257 S.W.3d 605, 608 (Mo. banc 2008). An agency relationship requires the existence of three elements: (1) an agent must have the authority "to alter legal relations between the principal and a third party"; (2) the agent must be "a fiduciary with respect to matters within the scope of the agency"; and (3) the principal must have "the right to control the conduct of the agent with respect to matters entrusted to the agent." *State ex rel. Ford Motor Co. v. Bacon*, 63 S.W.3d 641, 642 (Mo. banc 2002). The absence of any of the three elements defeats the purported agency relationship. *Id.* The Copelands argue that the first element is absent in that Lees had no authority from the Copelands to act on their behalf.

There are two types of authority sufficient to create an agency relationship: actual and apparent. *Lynch v. Helm Plumbing & Elec. Contractors, Inc.*, 108 S.W.3d 657, 660 (Mo. App. W.D. 2002). Actual authority relates to the ***agent's*** understanding of the principal's intent to give power to the agent to act on the principal's behalf. *See id.* Actual authority can be either express or implied. *Id.* Actual express authority occurs

14

when the principal expressly indicates that the agent has power to act on behalf of the principal. *Id.* Actual implied authority exists when a reasonable person would interpret the principal's conduct as desiring the agent to act on the principal's behalf. *Id.* Apparent authority, on the other hand, relates to ***third persons'*** understanding of the principal's intent to give power to the agent to act on the principal's behalf. "'Apparent authority is authority which a principal, by its acts or representations, has led third persons to believe has been conferred upon an agent.'" *Id.* (quoting *Stitt v. Raytown Sports Ass'n, Inc.*, 961 S.W.2d 927, 932 (Mo. App. W.D. 1998)). "Generally, any conduct by the principal which, if reasonably interpreted, would cause a third person to believe that the principal consents to the acts of the agent is sufficient to create apparent authority." *Id.* The Copelands argue that the evidence presented at trial does not support either a finding of actual authority or apparent authority. We disagree.

The evidence presented at trial concerned the business arrangement that Larry and Lees had with one another regarding the physical location of C&C Car Sales. In exchange for allowing the Copelands to designate the address of Auto Body Plus as the physical location for C&C Car Sales for the purpose of motor vehicle dealer licensing, Larry would allow Lees to use dealer tags allotted to C&C Car Sales. In furtherance of this business arrangement, Larry authorized Lees to act as a representative of C&C Car Sales for the purpose of inspections by the Department of Revenue, and Larry issued business cards to Lees that listed Lees as an owner of C&C Car Sales to give to the inspectors. Larry listed Lees as an owner on C&C Car Sales' yearly applications for a motor vehicle dealer license. Further, Larry and Lees installed a C&C Car Sales sign in

15

front of the Auto Body Plus building and posted C&C Car Sales' motor vehicle dealer license and business license in the Auto Body Plus building. Some of Lees's car sales were attributed to C&C Car Sales for purposes of reporting to the Department of Revenue. In connection with the sale of the Volkswagen, paperwork identified the seller as C&C Car Sales, and Billy made his initial payment with a cashier's check made payable to C&C Car Sales. When an issue arose about title to the Volkswagen, Lees offered Billy, and Billy accepted, a C&C Car Sales dealer tag for use on the vehicle.

This evidence could be reasonably interpreted to support either a finding of actual authority or apparent authority. Lees plainly had the authority to hold himself out as C&C Car Sales with Larry's consent, and to use C&C Car Sales dealer tags. Moreover, the circumstances surrounding the sale of the Volkswagen would reasonably lead a third party to believe that Lees was acting on behalf of C&C Car Sales.

The Copelands argue that even if evidence supports a finding of actual or apparent authority between Lees and C&C Car Sales, no evidence established an agency relationship between Lees and the Copelands. This argument conveniently ignores that as a sole proprietorship, C&C Car Sales was indistinguishable from the Copelands. Though Billy never met or communicated with the Copelands, Billy plainly could have believed that he was dealing with C&C Car Sales. The Copelands cite no authority for the proposition that a third party must interact with the sole proprietors/owners of an unincorporated business to establish apparent authority of another to act for the business. "The failure to cite relevant authority supporting a point or to explain the failure to do so

16

preserves nothing for review." *Jay Wolfe Used Cars of Blue Springs, LLC v. Jackson*, 428 S.W.3d 683, 689 (Mo. App. W.D. 2014) (internal quotation marks omitted).

The trial court did not err in assigning joint and several liability to the Copelands and Lees for the MMPA violation concerning the sale of the Volkswagen.

The Copelands' point on appeal is denied.

### Motion for Attorneys' Fees on Appeal

Pursuant to Local Rule XXIX, Julie filed a motion for attorney's fees on appeal, and we elected to take the motion with the case. Julie asserts that she is entitled to attorney's fees reasonably expended on appeal pursuant to section 407.025.1. In its ruling on Julie's motion for attorney's fees, the trial court stated that "[i]t is the judgment of the court that no attorney fees be awarded to any party in this case." We see no basis to disrupt that determination on appeal, particularly as Julie is not the prevailing party with respect to the claims she has asserted on appeal. The motion for attorney's fees on appeal is denied.

### Conclusion

The trial court's Judgment is affirmed.


_Cynthia L. Martin_____
Cynthia L. Martin, Judge


All concur