

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| ALPHA PETROLEUM COMPANY, | ) | |
| | ) | |
| Appellant-Respondent, | ) | **WD82222 Consolidated with** |
| | ) | **WD82230** |
| v. | ) | |
| | ) | **OPINION FILED:** |
| HANI DAIFALLAH, ET AL., | ) | **September 24, 2019** |
| | ) | |
| Respondents-Appellants. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Gregory B. Gillis, Judge

Before Division One:  Cynthia L. Martin, Presiding Judge, Victor C. Howard, Judge and
Alok Ahuja, Judge

Alpha Petroleum Company ("Alpha Petroleum") appeals from a judgment in its
favor which awarded it $43,760.00 and statutory interest against Hani Daifallah ("Hani")
and Mohammed Daifallah ("Mohammed")[1] (collectively "Defendants") for its claim of
nonpayment on account, but which denied an alternative claim of unjust enrichment which
sought the same damages.  The Defendants cross-appeal, claiming error in the grant of
judgment in favor of Alpha Petroleum because there was no substantial evidence to support

---

[1]Because Hani Daifallah and Mohammed Daifallah share a surname, we refer to each by their first name for
purposes of clarity.  No familiarity or disrespect is intended.

the trial court's conclusion that the Defendants were personally liable to Alpha Petroleum. We affirm.

## Factual and Procedural Background[2]

Alpha Petroleum is a wholesale supply company that purchases gasoline products from refining companies like ConocoPhillips and then sells those products to convenience stores. Alpha Petroleum's sister company, A.J. Partnership, is a real estate holding company that primarily owns convenience stores. Alpha Petroleum is the required fuel supplier for all convenience stores owned by A.J. Partnership. Javaid Chaudhri ("Javaid") and Arshad Chaudhri ("Arshad")[3] are each 50 percent owners of Alpha Petroleum and are the sole partners in A.J. Partnership.

In 2007, A.J. Partnership purchased ten convenience stores out of receivership, including a convenience store with gasoline services located at 700 East 85th Street in Kansas City, Missouri ("the Convenience Store").[4] At the time of A.J. Partnership's purchase of the Convenience Store, the Defendants were the Convenience Store's tenants and used two fictitious names for the store: "Every Day 700" and "Happy Day Conoco." The Defendants entered into a lease agreement with A.J. Partnership, the terms of which included the requirement that the Defendants purchase gasoline products from Alpha Petroleum.

---

[2]We view the evidence in the light most favorable to the judgment. *Shiplet v. Copeland*, 450 S.W.3d 433, 436 n.3 (Mo. App. W.D. 2014).

[3]Because Javaid Chaudhri and Arshad Chaudhri share a surname, we refer to each by their first name for purposes of clarity. No familiarity or disrespect is intended.

[4]The Defendants argue that we must disregard Alpha Petroleum's references to Exhibit 1, a copy of the receiver's deed reflecting A.J. Partnership as the owner of Convenience Store. We need not rely on this exhibit as the parties stipulated to the fact that A.J. Partnership owned the Convenience Store at trial.

2

Throughout the Defendant's tenancy at the Convenience Store, Alpha Petroleum authorized the Defendants to request fuel by directly contacting a third-party transportation company which had a contract with Alpha Petroleum. The third-party transportation company sourced fuel from ConocoPhillips and delivered it to the Convenience Store. ConocoPhillips would then bill Alpha Petroleum for the fuel, with payment due in seven days. Alpha Petroleum would then send the Defendants an invoice for the fuel. After collecting credit card payments made by the Convenience Store's customers and crediting that amount to the Defendants' account, Alpha Petroleum would debit the Defendants' bank account for the remaining balance.

In early 2012, Alpha Petroleum advised the Defendants that it was terminating the Defendants' lease of the Convenience Store. The Defendants requested additional time to vacate. Alpha Petroleum agreed to give the Defendants six months to vacate the Convenience Store. The Defendants vacated the Convenience Store at the end of July 2012.

Before the Defendants vacated the Convenience Store, there were two instances where Defendants received a fuel delivery for which Alpha Petroleum was not paid. On February 17, 2012, a delivery of fuel was made to the Convenience Store, and Alpha Petroleum issued an invoice addressed to "Everyday 700 (Happy Days Conoco)." The invoice indicated that the balance due was $23,189.28,[5] and that the balance would be

---

[5]The total invoice was in the amount of $26,895.06. After crediting the Defendants $3,705.78 for credit card payments, the net due for the February 17, 2012 fuel delivery was $23,189.28.

drafted electronically from the Defendants' bank account on February 23, 2012.[6] Due to an internal accounting error, Alpha Petroleum failed to debit the Defendants' bank account for the February 17, 2012 fuel delivery. Alpha Petroleum did not discover its error until July 2012, during a reconciliation of its records for the Convenience Store. Upon discovering its error, Alpha Petroleum attempted to debit the Defendants' bank account for the unpaid invoice, but it was notified that a stop payment had been entered for the invoice.

On July 11, 2012, the Defendants received a final fuel delivery for the Convenience Store. Alpha Petroleum issued an invoice to "Everyday 700 (Happy Days Conoco)" reflecting a balance due for the fuel delivery in the amount of $26,445.09, which "[would] be drafted EFT from your bank account on: 7/17/2012."[7] Alpha Petroleum attempted to collect payment from the Defendants' bank account but learned that a stop payment had been entered for the invoice.

On July 23, 2012, Javaid sent a demand letter to the Defendants for the unpaid invoices totaling $49,634.37. Following a final inventory of the Convenience Store in July 2012, the Defendants were credited for fuel remaining in the storage tanks, leaving a balance due on the two unpaid invoice in the amount of $43,760.35.

Alpha Petroleum filed suit against the Defendants, both of whom were identified in the petition as doing business as "Every Day 700" and "Happy Day Conoco" seeking to

---

[6]The Defendants assert that the Alpha Petroleum's Exhibit 2, the February 17, 2012 invoice, was not received into evidence so that we must "disregard" the facts proven therein. [Defendants' Brief, p. 9] While Alpha Petroleum's Exhibit 2 was not received into evidence, the parties stipulated to the accuracy of the net due on the invoice and that the invoice was received by the Defendants. Further, Alpha Petroleum's Exhibit 11, a statement of the Defendants' account with Alpha Petroleum that included a copy of the February 17, 2012 invoice, was received in evidence without objection.

[7]The total invoice was in the amount of $27,324.99. After crediting the Defendants $879.90 for credit card payments, the net due for the July 11, 2012 fuel delivery was $26,445.09.

4

collect the unpaid invoices. Count I sought recovery on a theory of nonpayment on account. Count II sought recovery on a theory of unjust enrichment.

During a bench trial, Alpha Petroleum presented testimony from Javaid and two other employees to establish the balance due from the Defendants for fuel delivered to the Convenience Store. Hani and Mohammed testified that Zik Moe, Inc. ("Zik Moe"), a corporation owned in part by Mohammed, operated the Convenience Store, and that Zik Moe was responsible for the unpaid invoices. The Defendants further argued that Hani had no involvement in the operation of the Convenience Store.

The trial court issued its judgment on October 17, 2018 ("Judgment"). The Judgment found in favor of Alpha Petroleum on Count I and entered a joint and several judgment against the Defendants in the amount of $43,760.00 together with costs and post-judgment interest at the statutory rate. The Judgment found in favor of the Defendants on Count II.

Alpha Petroleum appeals. The Defendants cross-appeal. Additional facts are discussed as necessary to address the points on appeal.

### Standard of Review

We will affirm the judgment from a court-tried case "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

**Analysis**

Alpha Petroleum presents three points on appeal, all of which challenge the trial court's entry of judgment against Alpha Petroleum and in favor of the Defendants on Count II of its petition. The Defendants present two points on appeal, both of which challenge the trial court's entry of judgment against the Defendants and in favor of Alpha Petroleum on Count I of Alpha Petroleum's petition. Because Alpha Petroleum acknowledges that it "is not seeking double recovery" and is instead simply "seeking reversal to preserve its rights in the unlikely event that the judgment on account is reversed," we consider the Defendants' points on appeal first. [Alpha Petroleum's Brief, p. 23 n.3]

*Defendants' Points on Appeal*

The Defendants' two points on appeal are premised on the argument that Zik Moe is the only entity liable for the unpaid fuel invoices owed to Alpha Petroleum. The Defendants' first point argues that there was no substantial evidence in the record to support the trial court's conclusion that Hani and Mohammed were personally liable for the debt owed by Zik Moe to Alpha Petroleum. The Defendants' second point argues that the trial court misapplied the law by piercing the corporate veil to find Hani and Mohammed liable for Zik Moe's debt owed to Alpha Petroleum.

"To prevail on the substantial-evidence challenge, [the Defendants] must demonstrate that there is no evidence in the record tending to prove a fact that is necessary to sustain the circuit court's judgment as a matter of law." *Ivie v. Smith*, 439 S.W.3d 189, 200 (Mo. banc 2014). The Defendants have not sustained this burden.

6

The Defendants assert that the record establishes the following undisputed facts: (1) Alpha Petroleum supplied fuel to the Convenience Store; (2) Zik Moe operated the Convenience Store; (3) Alpha Petroleum invoiced "Everyday 700 (Happy Day Conoco)" for the gasoline it supplied to the Convenience Store; (4) the invoices were not addressed to either Hani or Mohammed; (5) Alpha Petroleum was authorized to debit Zik Moe's bank account to receive payment for the fuel it supplied to the Convenience Store; and (6) A.J. Partnership, Alpha Petroleum's sister company, sent letters addressed to Happy Day Conoco in the care of Mohammed regarding the lease of the Convenience Store. The Defendants argue that this undisputed evidence required a conclusion that neither Hani nor Mohammed were personally liable to Alpha Petroleum. In addition, the Defendants assert that undisputed evidence establishes that Hani had no role in operating the Convenience Store because: (1) the letters A.J. Partnership sent to Happy Day Conoco were not addressed to Hani; (2) Hani was never an owner of Zik Moe; (3) Hani never paid the bills of Zik Moe from his personal funds; and (4) Hani never played a role in the operation of Happy Day Conoco.

The Defendants' arguments, which rely on evidence contrary to the judgment, ignore the standard of review we are required to apply in appeals that claim no substantial evidence supports a judgment. "Substantial evidence is evidence that, if believed, has some probative force on each fact that is necessary to sustain the [trial] court's judgment." *Ivie*, 439 S.W.3d at 199. In determining whether the judgment is supported by substantial evidence, we "view in the evidence in the light most favorable to the [trial] court's judgment and defer to the [trial] court's credibility determinations." *Id.* at 200. We "'accept as true

7

the evidence and inferences . . . favorable to the trial court's [judgment] and disregard all contrary evidence.'" *Id.* (quoting *Zweig v. Metro. St. Louis Sewer Dist.*, 412 S.W.3d 223, 231 (Mo. banc 2013)). "[N]o contrary evidence need be considered on a substantial-evidence challenge . . . ." *Id.* Here, substantial evidence permitted the trial court to conclude that Hani and Mohammed were personally liable for the debt owed Alpha Petroleum because Hani and Mohammed never disclosed that they were acting as agents for Zik Moe.

Missouri courts have a long held that "'where one who is in fact the agent for another makes a contract with a third person without disclosing the fact of agency, . . . he will be individually bound by the contract and the third party may hold the agent or the undisclosed principal at his election.'" *David v. Shippy*, 684 S.W.2d 586, 587-88 (Mo. App. S.D. 1985) (quoting *Hartwig-Dischinger Realty Co. v. Unemp't Comp. Comm'n*, 168 S.W.2d 78, 81 (Mo. banc 1943)). It is not enough that an agent discloses his status as an agent. *Id.* at 588. The agent must also disclose the identity of the principal to relieve himself of personal liability. *Id.* Without disclosure of the principal's identity, "'the party dealing with the agent may understand that he intended to pledge his personal liability and responsibility in support of the contract and for its performance.'" *Id.* (quoting 3 AM. JUR. 2D *Agency* section 320 (1962)). "'The other party has notice of the existence or identity of the principal if he knows, has reason to know, or should know of it, or has been given notification of the fact.'" *Id.* (quoting RESTATEMENT (SECOND) OF AGENCY section 4 cmt. a (AM. LAW INST. 1958)). The obligation of disclosure is not satisfied by the fact that the principal is incorporated. *Id.*

The trial court heard testimony from Javaid, one of the two owners of Alpha Petroleum and one of the two partners in A.J. Partnership. Javaid testified that, during the process of purchasing the Convenience Store, he had conversations with Hani and Mohammed. Javaid testified that "both brothers approached me and showed their desire to . . . stay in [the] capacity of tenant." In response to a question about whether either Hani or Mohammed represented that they were agents of a corporation at the outset of their business relationship, Javaid testified, "They never brought a corporation in." Javaid explained that he never required a letter of credit because "their credentials were good enough for me, so I decided to take a chance and do business with them personally." When Alpha Petroleum's attorney asked whether Javaid received a personal guarantee from Hani and Mohammed, Javaid testified, "Yes, I did." Javaid then testified that, in the five years he had a business relationship with Hani and Mohammed, neither one said that they were agents of a corporation. Further, Javaid testified that, while there was signage in the Convenience Store indicating that it was called "Everyday 700" and "Happy Day Conoco," the signs in the store were simply fictitious names (a practice Javaid testified was common in the industry) that included no reference to another business entity.

Javaid testified that Hani and Mohammed both agreed to the usual process of obtaining fuel from Conoco and that they agreed to Alpha Petroleum's usual process of supplying fuel to its customers, including an agreement to debit the Defendants' bank account for the amount due after sending an invoice to them. Though there was no written contract between Alpha Petroleum and the Defendants, Javaid testified that throughout the five-year relationship with the Defendants, payment for fuel delivered to the Convenience

9

Store came from different bank accounts as directed by Hani or Mohammed. Javaid testified that after Alpha Petroleum's unsuccessful attempts to debit the Defendants' bank account for the unpaid invoices, he called Hani who advised the he would pay Alpha Petroleum.

From Javaid's testimony, the trial court could have concluded that neither Hani nor Mohammed disclosed their purported status as agents for Zik Moe. Based on this substantial evidence, the trial court was free to conclude that Hani and Mohammed were personally liable to Alpha Petroleum, despite contrary evidence in the record. The Defendants' first point on appeal is denied.

Because there was substantial evidence to support the trial court's conclusion that Hani and Mohammed were personally liable for the unpaid invoices owed to Alpha Petroleum based on their failure to disclose an alleged agency relationship with Zik Moe, we need not consider whether the trial court properly found Hani and Mohammed personally liable for the debt owed Alpha Petroleum by piercing Zik Moe's corporate veil. The Defendants' second point on appeal is denied as moot.

### *Alpha Petroleum's Points on Appeal*

Alpha Petroleum's three points on appeal are denied as moot as the Judgment on account in favor of Alpha Petroleum is affirmed, and Alpha Petroleum has thus received all the recovery it sought from the Defendants. *See Smith v. City of St. Louis*, 395 S.W.3d 20, 27 (Mo. banc 2013) ("'A party cannot appeal from a judgment wholly in his favor, one that gives him all he asks . . . .'" (quoting *Page v. Hamilton*, 329 S.W.2d 758, 762 (Mo. banc 1959))).

10

## Conclusion

The Judgment is affirmed.

_Cynthia L. Martin_
Cynthia L. Martin, Judge

All concur

11